457 So.2d 94 (1984)
STATE of Louisiana
v.
Joseph J. BAILEY.
No. KA-1211.
Court of Appeal of Louisiana, Fourth Circuit.
August 31, 1984.
*96 James A. McCann, McCann, McCann & Mirabile, New Orleans, for defendant/appellant.
John F. "Jack" Rowley, Dist. Atty., Glenn E. Diaz, Asst. Dist. Atty., Chalmette, for plaintiff/appellee.
Before GULOTTA, LOBRANO and ARMSTRONG, JJ.
LOBRANO, Judge.
The defendant, Joseph Bailey, was charged by bill of information with the February 14, 1981 negligent homicide of three year old, Samantha Kelly, a violation of LSA R.S. 14:32.[1] On June 8, 1981, defendant was arraigned and pled not guilty. His first trial resulted in a mistrial. His second was held February 9, 10 and 11, 1983. A six person jury found the defendant guilty as charged. On April 14, 1983, defendant was sentenced to three years, Department of Corrections and fined $2,000.00.
FACTS:
The evidence shows that on February 14, 1981, at approximately 9:00 p.m., Karen Carreras was driving a friend's 1980 Thunderbird automobile in an easterly or "up the road" direction on St. Bernard Highway. In the front seat, as a guest passenger, was her three year old daughter, Samantha Kelly.
At the same time and location, defendant Joseph Bailey, Jr., was driving his uncle's 1980 Pontiac Trans-Am automobile in a westerly or "down the road direction. With him in the front seat as guest passenger was Joseph Moran.
Also at the same time and location, Mr. Edward Ceaser was driving his 1968 Oldsmobile automobile directly in front of the vehicle driven by Karen Carreras. With him, as guest passengers, were Dolores Major and Ruth Reddix. At some point in time, while all three drivers were simultaneously operating their vehicles, defendant's vehicle side-swiped the Ceaser vehicle and collided head-on with the Carreras vehicle. The three year old child, Samantha Kelly died as a result of the collision. Defendant was arrested on charges of negligent homicide, by driving while intoxicated and at an excessive rate of speed. From his conviction and sentence, defendant appeals asserting six assignments of error:
1) The State did not carry its burden of proving guilt beyond a reasonable doubt;
2) The trial court erred in allowing the jury to view a photograph of the dead child;
3) Counsel for defense was erroneously precluded from unfettered cross-examination of the State's witnesses;
4) The trial court erred in allowing the State to present cumulative expert testimony;
5) The defendant was erroneously denied a fair trial due to improper closing argument by the prosecution and uncalled for theatrics at the close of the State's case;
6) The trial court erroneously imposed a harsh and excessive sentence.
This case was vigorously prosecuted and defended. The record has been carefully reviewed not only as to each assignment of error cited by defendant but also for errors patent and sufficiency of evidence as mandated by law. La.C.Cr.P. Art. 920(2); State v. Raymo, 419 So.2d 858 (La.1982); Jackson v. Virginia; 443 U.S. 307, 99 S.Ct. *97 2781, 61 L.Ed.2d 560 (1970), and State v. Edwards, 400 So.2d 1370 (La.1981).
ERRORS PATENT:
We find none.
SUFFICIENCY OF EVIDENCE:
ASSIGNMENT OF ERROR 1.
Defendant contends that there was not sufficient credible evidence for the jury to have found him guilty beyond a reasonable doubt. Whether evidence is credible or not is not a determination appropriate for appellate review. Evaluations of credibility are well within the province of the jury as trier-of-fact. State v. Shepherd, 332 So.2d 228 (La.1976). The question of sufficiency is proper for review, but depends on whether the court, after viewing the evidence in the light most favorable to the prosecution, can determine that there was sufficient evidence for the jury to have found the defendant guilty beyond a reasonable doubt on every essential element of the offense. Jackson v. Virginia, supra; State v. Fuller, 414 So.2d 306 (La.1982). In addition, when circumstantial evidence partly forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1983); State v. Austin, 399 So.2d 158 (La.1981).
Defendant was convicted of negligent homicide.[2] The elements of the offense consist of:
1) The killing
2) of a human being
3) by criminal negligence
Criminal negligence is "such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." LSA R.S. 14:12.
At trial, defendant's guest passenger, Joseph Moran, testified that he accompanied defendant on the night in question to a local bar where defendant consumed between eight and nine beers within an hour and half. Dr. Monroe Samuels, the state's expert in toxicology, testified that a man of defendant's height and weight would have a blood alcohol content of .15-.19 after consuming that much alcohol. Samuels further testified that such an individual's reaction would be slowed and his vision impaired.
Moran further testified that defendant was traveling between 65 and 70 m.p.h., possibly faster, at the moment of impact, and that he thought the defendant was traveling east or "down the road". However, on redirect, he stated that because he was "drunk" he wasn't sure whether they were traveling "up or down" the road.
The only eye witness who testified that the defendant was traveling east, not west and the victim was traveling west, was Rodney Jones. However, Mr. Jones' testimony can hardly be construed as exculpating the defendant since he testified that the defendant passed him, was weaving quite a bit, and struck the victim's car in the opposite lane of traffic. The impression he got while watching the defendant's car was that defendant was a drunk driver. Moreover the credibility of either all or part of Mr. Jones testimony was for the jury to decide. Upon cross examination, he claimed to have invented all automobiles on the road, the design for the space shuttle and various other items. He claimed his designs were "stolen from his mind" because his "eyes give off Morse Code".
The defendant also offered the testimony of Janice Brock, a friend who had seen defendant at the bar on the night in question. She could not remember if he was drinking but did remember that he turned left, or headed down the road, when he left the bar.
*98 Ross Macklin, accident reconstruction specialist, calculated the defendant was traveling between 62-67 m.p.h. at the moment of impact.
John Rigol, accident reconstruction specialist testified that the defendant's car was traveling west on St. Bernard Highway, veered out of control and collided with the victim's car. The paint scrapings taken from the victim's car and Mr. Ceaser's car could have come from the defendant's white Trans-Am.
When the evidence is considered in the light most favorable to the prosecution to the exclusion of every reasonable hypothesis of innocence, a reasonable trier of fact could have concluded that defendant was drunk and driving at an excessive rate of speed when he crashed into the victim's car thus causing the death of three year old Samantha Kelly.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR 2:
Defendant contends that a photograph of the victim admitted into evidence was unduly prejudicial and constitutes reversible error.
At trial, the defense offered to stipulate to the fact that Samantha Kelly died as a result of the collision. Nevertheless, the state offered two photographs of the child, exhibits S-16 and S-17. The trial judge refused to admit S-16 as unduly prejudicial, but received into evidence S-17 which depicts the victim shortly after the accident. The court ruled the picture was probative of death and not gruesome.
Exhibit S-17, while disquieting, is not gruesome as that word is ordinarily meant. In State v. Edwards, 406 So.2d 1331 (La. 1981), the Louisiana Supreme Court stated:
"Photographs of the victim's body are generally relevant to prove corpus delicti; to corroborate other evidence of the manner in which death occurred; to establish the location, severity and number of wounds; to establish the identity of the victim. State v. Manieri, 378 So.2d 931 (La.1979); State v. Cooper, 334 So.2d 211 (La.1976). The fact that the photographs may be gruesome does not in and of itself render them inadmissible. State v. Beach, 320 So.2d 142 (La.1975); State v. Curry, 292 So.2d 212 (La.1974). The defense argues that its offer to stipulate to the identity of the victim and the nature of the death, together with testimony of Dr. Massey, of investigating officers and of the photographer rendered the admission of the photographs cumulative rather than probative. However, the admissibility of photographs is primarily a question reserved to judicial discretion." Citations omitted. Id. at 1349.
On this issue we do not feel the trial judge abused his discretion.
Defendant also asks this court to view the photograph in light of the remarks made by the district attorney in his closing argument. "If it triggered your sympathy, it triggered your passion, I am glad it did, but I ask that that not be part of your consideration in determining guilt or innocence and I am telling youI can't tell youI am asking that it not be part of it." The defendant failed to object or move for a mistrial at the time these remarks were made and cannot now raise them on appeal. La.C.Cr.P. Art. 841.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR 3.
Defendant asserts that he was precluded from unfettered cross-examination and from an orderly presentation of his defense by certain rulings of the trial judge. Specifically he claims that he was not allowed to cross examine the victim's mother on the issue of whether she had filed a civil damage suit against defendant. The state objected on grounds of relevancy and the trial judge sustained the objection. The defendant avers that Ms. Carreras had not filed such a suit and that the jury could have drawn a negative inference about her credibility.
The defendant further complains that the trial judge should have allowed the defense to show the jury S-8, a picture of defendant's car, while he was attempting to impeach a witness' identification of the vehicle. *99 Instead, at the state's request, the court withheld the photograph until the prosecution rehabilitated the witness on redirect.
Defendant does not urge that these rulings would merit reversal in and of themselves, but argues that their cumulative effect prevented an orderly presentation of his case and precluded him from unfettered cross-examination.
The control of the examination of witnesses in within the sound discretion of the trial judge and will not be disturbed absent an abuse of discretion. State v. Jackson, 419 So.2d 425 (La.1982); State v. Coleman, 406 So.2d 563 (La.1981); State v. Eaker, 380 So.2d 19 (La.1980).
The record reveals the defendant was given ample opportunity to present his defense. The rulings complained of are neither crucial nor material to a defense. Even were the alleged errors cumulated, they do not show an abuse of discretion that would merit reversal.
This assignment lacks merit.
ASSIGNMENT OF ERROR 4.
Defendant contends that the trial court erred in permitting the expert testimony of Ross Macklin and John Rigol as being cumulative. In addition he argues that their findings as to the speed of defendant's car were unsupported by the record.
First, a review of the record reveals that John Rigol's testimony was confined to the direction of the vehicles and the point of impact and Ross Macklin's testimony was confined to the speed of the vehicles. The testimony of Macklin as to the point of impact or direction of the vehicles was elicited by the defense on cross-examination.
Second, the defendant bases his complaints of Macklin's calculations on the Louisiana Supreme Court's holding in State v. Self, 353 So.2d 1282 (La.1977). In Self, the Supreme Court determined that the accident reconstruction expert did not understand the model he employed to calculate speed and they reversed. Furthermore, the Court appeared to view the test the expert used with disfavor.
In the instant case, Macklin based his calculations on a different test. Measuring the six points of definition of damage on the defendant's car, he was able to come close to Joseph Moran's eyewitness estimate that defendant was traveling at 65-70 m.p.h. Macklin estimated the speed at 62-67 m.p.h. Macklin stated that the test he used was one currently employed by federal agencies and private entities and the test was accurate to "a point, plus or minus 5 m.p.h. at 100 m.p.h." He also testified that the margin of error decreased with a decrease in the rate of speed.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR 5.
Defendant contends that remarks and conduct by the district attorney prejudiced defendant's right to a fair trial and requires reversal. These remarks occurred during closing argument. One was the impermissible use of a presumption against defendant[3] and the other was a plebicite on crime indulged in by the district attorney.[4] Even if we felt these remarks *100 had serious merit, we will not consider them since no objection was taken, nor mistrial asked for at the time they occurred. See, La.C.Cr.P. Art. 431; State v. Russell, 416 So.2d 1283 (La.1982); State v. Johnson, 406 So.2d 153 (La.1981).
Defendant also complains of the conduct of the victim's mother, Karen Carreras. Defendant asserts that the witness was put on the stand solely for the purpose of appealing to the jury's sympathy and that not only did the witness cry but made an emotional display outside the courtroom, within hearing of the jury. He contends the state allowed her to remain within the judge's anteroom in order for her grief to be audible.
The state contends that the direction of the vehicles was in issue and that this witness's testimony was necessary to rebutt the defendant's theory of the case. Furthermore, the trial judge, in his reasons for denying the motion for a mistrial, stated that the witness was audible only when the courtroom door was opened, and that he immediately sent his court reporter to remove the witness to his office to remedy the situation.
This court has held that mistrial is a drastic remedy and should not be ordered unless the court is absolutely convinced that the complained of conduct contributed to the verdict. State v. Allen, 431 So.2d 808 (La.App. 4th Cir.1983). The trial judge has the discretion of determining if the complained of activity or comments so prejudiced the defendant that he could not receive a fair trial. La.C.Cr.P. Art. 77; State v. Domangue, 350 So.2d 599 (La. 1977).
The instant case does not reveal an abuse of discretion warranting the substitution of this court's judgment for that of the trial judge who conducted the trial and who was in the best position to assess the impact of the witness' conduct upon the jury. State v. Allen, supra.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR 6.
Defendant contends that his three year prison term and $2000 fine is excessive and unduly harsh.
The penalty provision of LSA R.S. 14:32 states as follows: "Whoever commits the crime of negligent homicide shall be imprisoned with or without hard labor for not more than five years, fined not more than five thousand dollars, or both."
The Louisiana Constitution prohibits the imposition of excessive punishment. Art. 1, Sec. 20. The imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment that is enforceable by this Court on appellate review of his conviction. State v. Sepulvado, 367 So.2d 762 (La.1979). The sentencing judge must articulate reasons for an "apparently severe" sentence tailoring it to the individual offender and the particular offense. State v. Tilley, 400 So.2d 1363 (La.1981).
While not articulating every mitigating and aggravating circumstance, the sentencing judge noted that defendant was a second offender and, therefore, not eligible for a suspended sentence. See La.C. Cr.P. Art. 893. Additionally, the judge stated that regardless of whether the defendant was a second offender, he had killed a three-year-old child and was under the influence of alcohol at the time of the offense. Thus, the judge found that any lesser sentence would deprecate the seriousness of the offense. Furthermore, the defense was allowed to read excerpts of the pre-sentence report into the record prior to the rendition of sentence.
Insofar as the length of the sentence, five year sentences have been upheld in State v. Kersey, 406 So.2d 555 (La.1981) and State v. Daranda, 398 So.2d 1053 (La. *101 1981). In Kersey, supra, the Louisiana Supreme Court affirmed the maximum sentence notwithstanding the trial judge's failure to state each and every mitigating and aggravating circumstance. In Daranda, supra, on appeal after remand, the Supreme Court found that the five year sentence was not unduly harsh, given the defendant's excessive level of intoxication at the time of the offense.
Defendant cites the court to State v. Spence, 418 So.2d 583 (La.1982 and State v. Prescott, 431 So.2d 85 (La.App. 5th Cir. 1983) as authority for his argument. In neither case, however, were the details of the offenders' backgrounds and personal histories discussed. Although both received suspended sentences for convictions on two counts of negligence homicide, the judge in the instant case was precluded from giving defendant a suspended sentence because he is a second offender.
This assignment of error lacks merit.
For the foregoing reasons defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] La.R.S. 14:32:

"Negligent homicide is the killing of a human being by criminal negligence.
The violation of a statute or ordinance shall be considered only as presumptive evidence to such negligence.
Whoever commits the crime of negligent homicide shall be imprisoned with or without hard labor for not more than five years, fined not more than five thousand dollars, or both."
[2] Defendant was charged in 1981, prior to the 1983 enactment of R.S. 14:32.1, the vehicular homicide statute.
[3] At various times during closing argument, the state alluded to the absence of defendant's uncle, brother, or patrons of the bar who might have testified as to whether the defendant had been drinking before the accident. In addition, on rebuttal argument, the D.A. referred to the absence of Valdetta Jones, the ex-wife of defendant's witness, Rodney Jones. The D.A. commented that the jury could presume that Ms. Jones' testimony would be unfavorable to the defendant. Defendant argues that Ms. Jones' whereabouts are unknown to the defense and that she had been subpoenaed by the state. Thus, she was not under the defendant's control and the 15:438 presumption should not have been argued to the jury under State v. Simms, 381 So.2d 472 (La.1980).
[4] The state also made several remarks during closing argument which were clearly improper such as asking the jurors to "send out a message" that drivers like the defendant would not be tolerated. However, even when such remarks have been objected to and have been reviewed on appeal, the convictions have usually been upheld, if there is substantial evidence justifying the verdict. See, State v. Messer, 408 So.2d 1354 (La.1982); State v. Sugar, 408 So.2d 1329 (La.1982); State v. Johnson, 406 So.2d 153 (La.1981); State v. McClinton, 399 So.2d 178 (La.1981).