[1] Defendant, Leonard Clark, was charged with violation of LSA-R.S. 14:32.1 — vehicular homicide. A jury trial was held at which the defendant was found guilty of negligent homicide. The trial court sentenced the defendant to serve three years at hard labor. Clark now appeals his conviction and sentence. We affirm.
[2] On January 19, 1985 at approximately 8:30 p.m., Randy Bourgeois, his wife and two children and his wife's parents, Mr. and Mrs. Gerald Waguespack, were returning to their home in Union, La., from a family dinner in Napoleonville, La. Mr. Waguespack was riding in the front passenger seat of the Ford Granada as they drove eastbound on La. 70, near the Sunshine Bridge. According to the arrest report, Leonard Clark was driving a pick-up truck with one passenger, Charlie Garnett. When Clark approached the intersection of La. 18 Service Road and La. 70, he failed to yield to traffic approaching on La. 70 and ran through a stop sign. The pick-up truck collided with the right side of the Granada, causing serious injury to Mr. Waguespack.
[3] Clark left the accident site, but was returned to the scene of the accident a short time later by a deputy. A strong odor of alcohol was detected on Clark's breath and clothing; he displayed poor balance and exhibited slurred speech. Clark was then transported to the Donaldsonville Sheriff's office. The defendant was read his rights, and refused to sign the form or take a sobriety test. A subsequent breath test revealed that the defendant had an alcohol blood content of .19%. He was arrested and charged with driving while intoxicated.
[4] On January 20, 1985, Mr. Waguespack died as a result of the injuries he received in the accident and the defendant was then charged with vehicular homicide.
[5] On appeal, defendant presents five assignments of error:
[6] 1. Whether or not the trial judge committed reversible error when he qualified Dr. Monroe Samuels as an expert witness on the effects of alcohol on the human body.
[7] 2. Whether or not a three-year prison term for a first offender charged with vehicular homicide and convicted of negligent homicide is excessive. *West Page 1355 
[8] 3. Whether or not the jury verdict was contrary to the evidence presented.
[9] 4. Whether or not the trial judge committed reversible error when he permitted hearsay testimony to be heard by the jury with the ruling that it is part of the res gestae.
[10] 5. Whether or not the trial judge committed reversible error when he refused to admit evidence of a settlement in the civil suit arising out of this criminal activity to be heard by the jury.
[11] Assignment of Error No. One
[12] Defendant argues that Dr. Monroe Samuels testified that the effects of alcohol on the human body is a part of general medical knowledge and not a distinct medical field of expertise, therefore, the trial court should not have qualified Dr. Samuels as an expert.
[13] The record reveals that Dr. Samuels was offered by the State as an expert in the field of forensicpathology and toxicology who was qualified to testify as to the effects of alcohol on the human body, not as an expert on the effects of alcohol on the body. The court qualified him as such only after assurance by the defense that there were no objections to his qualifications. However, at the beginning of his testimony as an expert witness, Dr. Samuels was asked by the State, "What happens to the human body as alcohol is taken into the body?" At this point, defense counsel objected to Dr. Samuels' qualifications. The trial court then permitted both parties to further examine Dr. Samuels as to his qualifications. The trial judge, on several occasions, attempted to determine exactly what defendant's objection to Dr. Samuels' testimony was based on, and permitted further examination so that the concerns of the defendant's counsel could be dispelled.
[14] The examination revealed the following pertinent information. Dr. Samuels testified that he is a physician specializing in the field of pathology and that he is board-certified in anatomic pathology, pathology, forensic pathology and toxicology. Dr. Samuels is the Associate Director of Laboratories at Charity Hospital and a professor of Pathology Medicine and Clinical Pharmacology at L.S.U. Medical School. He has also been the Chief Consulting Pathologist and Toxicologist at the Orleans Parish Coroner's office since the 1950's. He has testified in numerous cases on the subjects of forensic pathology and toxicology and, specifically, on alcohol intoxication. Dr. Samuels testified that his qualifications as an expert have never been denied. He further testified that he has read everything pertinent to the field of alcohol since he became interested in the subject thirty years ago. In the late 70's, Dr. Samuels participated in a study conducted by Charity Hospital on the effects of alcohol and their relationship to pedestrian accidents. Dr. Samuels listed other more recent seminars he has attended as part of his continuing education on alcohol and its effect on drivers.
[15] Upon hearing the extensive qualifications of Dr. Samuels, the trial judge again accepted Dr. Samuels as an expert in the field of forensic pathology and toxicology and allowed him to testify as to the effects of alcohol on the human body.
[16] The statutory rules for competency of expert witnesses in a criminal trial are provided in LSA-R.S. 15:464 and 15:466. These statutes provide as follows:
[17] Sec. 464. Expert testimony
[18] On questions involving a knowledge obtained only by means of a special training or experience the opinions of persons having such special knowledge are admissible as expert testimony.
[19] Sec. 466. Qualification of experts
[20] The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court.
[21] It is a well-established jurisprudential rule that the determination of the competency *West Page 1356 
of an expert witness is a question of fact and the trial court's ruling should not be disturbed in the absence of manifest error. State v.Self, 353 So.2d 1282 (La. 1977); State v. Rogers,324 So.2d 358 (La. 1976); State v. Mitchell, 476 So.2d 825
(La.App. 5 Cir. 1985).
[22] We find that Dr. Samuels' extensive knowledge and qualifications in the medical field of pathology and toxicology abundantly provide the requisite background and experience to be qualified as an expert on the effects of alcohol on the human body. Therefore, we find no manifest error. This assignment has no merit whatsoever.
[23] Assignment of Error No. Two
[24] The defendant contends that his sentence of three years at hard labor as a punishment for his conviction of negligent homicide is excessive in view of his previous record. LSA-R.S.14:32 provides that a person convicted of negligent homicide "shall be imprisoned with or without hard labor for not more than five years, fined not more than five thousand dollars, or both."
[25] Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition of cruel, excessive, or unusual punishment. A sentence is excessive if it is "grossly out of proportion to the severity of the crime" or "nothing more than the purposeless and needless imposition of pain and suffering."State v. Brogdon, 457 So.2d 616 at 625 (La. 1984), cert. denied, Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Gordon,504 So.2d 1135 (La.App. 5 Cir. 1987). The imposition of a sentence may violate a defendant's constitutional rights against excessive punishment even if it is within the statutory limits. Statev. Sepulvado, 367 So.2d 762 (La. 1979); State v.Tyler, 524 So.2d 239, (La.App. 5 Cir. 1988). Sentences must be individualized to be compatible with the offenders as well as the offenses. State v. Robicheaux, 412 So.2d 1313 (La. 1982); State v. Bryant, 428 So.2d 1167 (La.App. 5 Cir. 1983). The trial court is granted wide discretion in sentencing a defendant, and a penalty which is within the statutory limits may not be set aside absent a manifest abuse of that discretion.State v. Lanclos, 419 So.2d 475 (La. 1982); State v.Gordon, supra. Further, in sentencing a defendant, the court must consider the guidelines articulated in C.Cr.P. art. 894.1.
[26] In sentencing the defendant in the instant case, the trial judge gave a complete recitation of all mitigating and aggravating factors which were considered in sentencing, including the defendant's longstanding problem with substance abuse and his failure to follow previous recommendations of medical and mental health personnel in various treatment facilities with which he became involved subsequent to former charges. The defendant's previous record which included a conviction for driving while intoxicated, misdemeanor theft, and disturbing the peace, was also considered by the trial court. Other factors considered in sentencing was the ultimate harm caused by the actions of the defendant, as well as his attempt to blame the collision on his passenger.
[27] The court considered a mitigating factor to be the fact that, although the defendant had a criminal record, he was classified as a first felony offender for purposes of sentencing. The court also noted for the record that all mitigating factors, although not specifically articulated, were considered. Ultimately, the court found there is an undue risk that during the period of a suspended sentence or probation, this defendant would commit another crime, that he is in need of correctional treatment and a custodial environment, which can be provided most effectively by his commitment to an institution, and, further, that a lesser sentence would deprecate the seriousness of the crime.
[28] We find the facts of this case and the defendant's prior record fully support the sentencing choice of the trial judge. This assignment lacks merit.
[29] Assignment of Error No. Three.
[30] The defendant argues that there was insufficient evidence presented to convict *West Page 1357 
him of vehicular homicide in violation of LSA-R.S. 14:32.1. While the defendant was charged with vehicular homicide, he was found guilty of negligent homicide which is defined in LSA-R.S. 14:32 as "the killing of a human being by criminal negligence." Further, LSA-R.S. 14:12 provides:
[31] Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
[32] The jurisprudence of this state has established that evidence which tends to support a finding of ordinary negligence is not sufficient to constitute a proof of criminal negligence.State v. Hargrave, 411 So.2d 1058 (La. 1982).
[33] The Supreme Court explained the State's burden of proof in negligent homicide cases in State v. Fontenot, 408 So.2d 919
(La. 1981):
[34] . . . In order to convict a defendant of negligent homicide, however, the state must prove (1) that defendant was criminally negligent, i.e., that there was such disregard of the interest of others that the offender's conduct amounted to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances; and (2) that a killing resulted from this conduct.
[35] At trial in the instant case, evidence was introduced to show that the defendant's blood alcohol level was . 19% shortly after the accident. There was also evidence to show that the defendant was driving his truck on Highway 18 and that the vehicle in which the victim was riding was traveling east bound on La. 70. The evidence also made it crystal clear that the defendant failed to stop at a stop sign at the intersection of Highway 18 and La. 70, hitting the victim's car broadside. Charlie Garnett, a passenger in the defendant's truck, testified that he called out to the defendant to "watch the car coming" just before the truck approached the stop sign and again as they crossed the intersection, but the defendant said nothing and failed to stop. Mr. Garnett grabbed the steering wheel in an effort to avoid the collision, but it was too late.
[36] The State also introduced medical evidence which, we believe, proved beyond reasonable doubt that Gerald Waguespack, a passenger in the car that the defendant's truck collided with, died as a result of injuries sustained in the accident.
[37] In determining sufficiency, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational juror could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Edge,504 So.2d 1169 (La.App. 5 Cir. 1987), writ denied, 507 So.2d 226 (La. 1987).
[38] Considering the facts presented in this case, we hold that a rational juror, using the Jackson standard, could easily find the evidence sufficient to find the defendant guilty of negligent homicide. This assignment is without merit.
[39] Assignment of Error No. Four.
[40] The defendant argues that the court should not have permitted the State to present testimony from Trooper Saltaformaggio as to what Charlie Garnett, a passenger in the defendant's truck, said at the scene of the accident.
[41] At the beginning of Trooper Saltaformaggio's testimony, the State questioned him as to what happened when he arrived at the accident location to investigate the collision. During his narrative, Trooper Saltaformaggio attempted to relate a statement that Randy Bourgeois made to him. The defense objected, based on impermissible hearsay. The State argued that the statement was part of the res gestae and therefore admissible. Defense counsel argued that the proper foundation had not been established to show the statements *West Page 1358 
were part of the res gestae — that is, that the statements were made under the immediate pressure of the occurrence. At that point, the trial court required the State to establish more foundation for the question to show that the statement made by Bourgeois was made shortly after the accident occurred and while he was still under the pressure of the incident. Trooper Saltaformaggio proceeded to establish the time of the accident and his arrival (approximately six (6) minutes), and the very short period of time that elapsed between his arrival and the time when he spoke with the accident victims and the witness, Charlie Garnett.
[42] Trooper Saltaformaggio then testified as to what Randy Bourgeois told him at the accident site and was about to relate how Charlie Garnett, the passenger in the pickup truck, responded to his question, "What happened?". At this point, defense counsel again made an objection based on hearsay. That objection, too, was overruled using the res gestae exception as authority and the officer was allowed to testify as to what Garnett told him at the accident site. That action by the trial court forms the basis for defendant's present argument.
[43] Hearsay has been defined as "testimony in court, or written evidence of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out of court asserter." State v. Martin, 356 So.2d 1370
(La. 1978); on remand, 372 So.2d 563 (La. 1979); Statev. Martin, 458 So.2d 454 (La. 1984). Hearsay evidence is inadmissible in a criminal trial unless it fits within one of the specifically designated exceptions. R.S. 15:434; State v.Parker, 506 So.2d 675 (La.App. 5 Cir. 1987); writ denied,512 So.2d 456 (La. 1987). Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability. State v. Martin, supra.
[44] One such exception to the rule is the admission of testimony which forms part of res gestae. Res gestae has been defined as:
[45] ". . . events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of res gestae is always admissible in evidence." LSA-R.S. 15:447.
[46] In addition, LSA R.S. 15:448 provides: "To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
[47] The res gestae doctrine in Louisiana is a broad one and includes not only spontaneous utterances and declarations made before and after commission of crime, but also includes testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances. State v. Drew, 360 So.2d 500 (La. 1978), Cert. denied 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979). Close connexity in time and location is (usually) essential to the doctrine since no notice is required by the State of its intention to introduce evidence which forms part of the res gestae. State v. Haarala, 398 So.2d 1093 (La. 1981);State v. Catchings, 440 So.2d 153 (La.App. 4 Cir. 1983).
[48] We find the statements made by Garnett to Trooper Saltaformaggio were made shortly after the accident occurred since the police were called immediately and the officers arrived within minutes of the call and spoke to the witness almost immediately. In fact, the trooper testified that he met Garnett as he (the trooper) started walking toward the scene of the accident. The statement was a spontaneous response to the question "What happened?", made by a witness "under the immediate pressure of the occurrence" to an officer about *West Page 1359 
what he observed and in such close connexity to the accident in time and in place so as "to form in conjunction with it one continuous transaction". Therefore, we conclude that the declarations made by Charlie Garnett were part of the res gestae and admissible at trial.
[49] This assignment lacks merit.
[50] Assignment of Error No. Five
[51] The defendant argues that he should have been allowed to introduce the settlement of a civil suit arising out of the automobile accident which forms the basis of his conviction of negligent homicide since it is relevant to fault. we disagree.
[52] At trial, during cross-examination of Randy Bourgeois, the driver of the car in which the victim was a passenger, defense counsel asked if Mr. Bourgeois filed a civil law suit as a result of the accident. The State objected on the basis of relevancy and a lengthy discussion, out of the presence of the jury, ensued. The trial court ultimately decided against admission of any evidence regarding the civil suit, stating:
[53] THE COURT:
[54] Very simply, I don't want to preclude you from introducing any facts concerning this accident or how it occurred, but I do not believe that the judgment in the civil matter or the release in that civil matter is admissible in this case and I will not permit it to be filed.
[55] Defense counsel argued at trial that such evidence was relevant to show proximate cause of the injury and whether there was any question of contributory negligence on the part of Randy Bourgeois, the driver of the Granada.
[56] LSA-R.S. 15:435 states: "To be introduced, evidence must be relevant to the material issues." Relevant evidence is defined in LSA-R.S. 15:441, which holds:
[57] Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
[58] Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.
[59] LSA-R.S. 15:442 provides for the statutory determination of relevancy:
[60] The relevancy of evidence must be determined by the purpose for which it is offered; and when evidence has been excluded when offered for one purpose, but admitted when offered for another, its effect must be restricted to the purpose for which admitted, but no one can be heard to establish a fact for one purpose and deny it for another.
[61] The Supreme Court in State v. Ludwig, 423 So.2d 1073
(La. 1982) explained:
[62] The standard of relevancy adopted by our statutory evidence rules is based on logic and experience as opposed to a theory of a legal minimum of probative value adopted by some courts and championed by Wigmore.
[63] * * * * * *
[64] So long as the proffered evidence has a tendency to make a consequential fact more or less probable the "logical" relevancy test is satisfied. Our statutes require that evidence must be relevant to a "material issue", La.R.S. 15:435, but that evidence which "explain[s] a relevant fact" or "support[s] an inference" therefrom is admissible, and that relevant evidence is that which has a tendency to further the inquiry as to the commission of the offense and the intent. La.R.S. 15:441. Accordingly, we conclude that a fair reading of our statutory evidence rules as a whole indicates that the term "material issue" must be read in ordinary usage to mean of solid or weighty character, of consequence, or importance, rather than in an artificial or legalistic sense.
[65] Consequently, the sum and substance of our statutory relevancy rules, is essentially identical in concept to FRE 401, which provides: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the *West Page 1360 
action more probable or less probable than it would be without the evidence."
[66] See also State v. Barnes, 489 So.2d 402 (La.App. 5 Cir. 1986), writ denied 494 So.2d 1174 (La. 1986).
[67] Here, whether or not Randy Bourgeois may, in some way, have contributed to the cause of the accident in a civil sense, is irrelevant in the defendant's prosecution in a criminal matter. The trial judge is correct in his ruling that proximate cause in a civil sense is different from guilt in a criminal sense. It is well established that civil causation and responsibility are separate and distinct concepts from criminal culpability. As early as 1947, the Louisiana Supreme Court in State v.Kaufman, 30 So.2d 337 (La. 1947) held:
[68] Criminal negligence, like many other crimes, may involve both criminal responsibility to the state for the violation of the law, upon conviction of which punishment may be inflicted, and civil responsibility to the party injured, upon proof of which damages, and, in some states, in addition, exemplary damages, are recoverable. (citations omitted).
[69] It is not necessary that defendant's actions be the sole cause of the injury, only that his actions are sufficiently culpable to meet the standards of criminal negligence and that these culpable actions result in the victim's injury. LSA-R.S.14:12, 14:32. In the instant case, the defendant was allowed a thorough cross-examination and presentation of direct evidence to fully explore exactly how the accident occurred. Defense counsel questioned Mr. Bourgeois extensively about his actions before, during and after the collision. He brought out the fact that Mr. Bourgeois had consumed some alcohol at dinner. The State presented proof, beyond a reasonable doubt, that the defendant was intoxicated and failed to stop at a stop sign, which was the cause of the fatal automobile accident. The trial court has wide discretion in determining the relevancy of evidence and its determination will not be overturned absent a clear abuse of discretion. State v. Allen, 440 So.2d 1330 (La. 1983). We find no such abuse here. This assignment also lacks merit.
[70] We have reviewed the record for errors patent and found none.
[71] Accordingly, for the foregoing reasons, the conviction and sentence of the defendant is affirmed.
[72] AFFIRMED.