# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-420

STATE OF LOUISIANA

VERSUS

CAROL M. HUGHES

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 62746
HONORABLE LESTER P. KEES, DISTRICT COURT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Sylvia R. Cooks, and Billy Howard
Ezell, Judges.

Thibodeaux, J., Dissents and assigns written reasons.

**AFFIRMED.**

Honorable William E. Tilley
District Attorney - 30th Judicial District Court
P. O. Box 1188
Leesville, LA 71496-1188
Telephone: (337) 239-2008
COUNSEL FOR:
        Plaintiff/Appellee - State of Louisiana

Dmitrc Ian Burnes
BURNES & BURNES
711 Washington Street
Alexandria, LA 71309-0650
Telephone: (318) 448-0482
COUNSEL FOR:
        Defendant/Appellant - Carol M. Hughes

**Carol M. Hughes**
**763 Eagles Nest Drive - Lot 6**
**Rosepine, LA 70659**
**COUNSEL FOR:**
**Defendant/Appellant - Carol M. Hughes**

**COOKS, Judge.**

Defendant, Carol M. Hughes, pled guilty to negligent homicide, a violation of La.R.S. 14:32 and was sentenced to the maximum term of imprisonment of five years at hard labor. She appeals her conviction on the ground that her plea was not knowing, intelligent, or voluntary. She also requests we vacate her sentence on the basis of excessiveness. For the following reasons, we affirm Defendant's conviction and sentence.

## FACTS

Defendant and her estranged husband had a heated argument on January 15, 2002 at a Wal-Mart store in DeRidder. The argument continued after she returned to her residence to drop off her children and went to her husband's residence. She advised her husband that she was going to commit suicide. After leaving her husband's residence, she traveled at an extremely high rate of speed and told her husband via cellular phone that she had decided to end her life. The Defendant then drove her vehicle into the path of a pickup truck driven by Roger Dale Busby. Mr. Busby died instantly as a result of the impact. Defendant survived.

## INFIRMITY OF THE GUILTY PLEA

Defendant claims her guilty plea was not "knowing" because the trial court failed to inform her of the nature of the charge to which she pled and failed to determine that she understood the nature of that charge. The trial court questioned the Defendant regarding the Waiver of Constitutional Rights and Plea of Guilty form signed by the Defendant. The Defendant answered affirmatively when asked if she read and understood the form. The Defendant also stated that her attorney went over the form with her and that she had no questions for him. By signing the form, the Defendant acknowledged that she understood the elements and the nature of negligent homicide.

1

After the guilty plea form was received into evidence, the trial court and the Defendant had the following colloquy:

> BY THE COURT: Ms. Hughes, you are entering a plea of guilty to negligent homicide which is defined under R.S. 14:32 as the killing of a human being by criminal negligence. The violation of a Statute or Ordinance shall be considered only as presumptive evidence of such negligence. Whoever commits the crime of negligent homicide shall be imprisoned with or without hard labor for not more than 5 years, fined not more than $5,000.00, or, both. However, if the victim was killed as the result of receiving a battery and was under the age of 10 the offender shall be imprisoned at hard labor without benefit of probation or suspension of sentence for not less than 2, nor more than 5 years. Now, after reading that to you, do you have any questions about what constitutes the crime of negligent homicide?
>
> BY MS. HUGHES: No sir.

Thereafter, the State recited the factual basis for the charge and stated that the Defendant was driving in an "extremely grossly reckless manner at speeds above 100 miles an hour." When asked if they concurred in the factual basis presented, the Defendant and her counsel stated that they concurred in all facts except the rate of speed at which the Defendant was traveling. They did not know how fast the Defendant was traveling.

In her brief, the Defendant recognizes that the trial court informed her that she was entering a "plea of guilty to negligent homicide which is defined under R.S. 14:32 as the killing of a human being by criminal negligence." What the trial court did not do, the Defendant claims, is define criminal negligence. The Defendant further asserts:

> (1) Her plea could not be knowing without the definition of criminal negligence;
>
> (2) The reference to "negligent homicide" on the guilty plea form was insufficient as it did not contain a definition or a statute number;
>
> (3) Although the trial court informed her the definition of negligent homicide includes a presumption of negligence when there has been a violation of a statute or ordinance, the trial court failed to specify

2

whether this presumption was being relied upon and, if so, what statute or ordinance had been violated;

(4) The factual basis recited by the State did not satisfy the trial court's duty because it was given by the State, not the trial court, and it failed to specify the law or ordinance relied upon;

(5) Even if the State's recitation of the facts is interpreted as a reliance upon the general speed limit law for the presumption of negligence, Defendant's refusal to concur in the speed limit set forth by the State shows the Defendant did not understand the nature of the charge.

Louisiana Code of Criminal Procedure Article 556.1 provides in pertinent part:

> A. In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:

> (1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.

> . . . .

> E. Any variance from the procedures required by this Article which does not affect substantial rights of the accused shall not invalidate the plea.

Addressing the manner in which a trial court can satisfy the requirements of Article 556.1, this court has stated the following:

> The comments to article 556.1 state that the article ". . . incorporates the essence of F.R.Cr.P. 11." In fact, the wording of article 556.1 is very similar to that in Rule 11. Like article 556.1, Rule 11 requires that the Defendant be advised of the nature of the charge. Explaining how this particular requirement of Rule 11 could be satisfied, the United States Fifth Circuit Court of Appeal stated:

>> For simple charges such as those in this case, a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice. Charges of a more complex nature, incorporating esoteric terms or concepts unfamiliar to the lay mind, may require more explication. In the case of charges of extreme complexity, an explanation of the elements of the offense like that given the jury in its instructions may be required; this, of course, is the outer limit, for if an instruction informs a jury of the nature of the charge sufficiently for it

3

> to convict the defendant of it, surely it informs the defendant sufficiently for him to convict himself. We can do no more than commit these matters to the good judgment of the court, to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence.

(Footnote omitted.) *United States v. Dayton*, 604 F.2d 931, 938 (5th Cir.1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980).

*State v. Whiddon*, 99-1, p. 4 (La.App. 3 Cir. 6/2/99), 741 So.2d. 797, 800.

In the present case, the trial court attempted to satisfy the requirements of Article 556.1 by reading verbatim the definition of negligent homicide as it is set forth in La.R.S. 14:32. That statute provides in part:

> A. Negligent homicide is the killing of a human being by criminal negligence.

> B. The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.

Clearly, by reading the statute verbatim, the trial court informed the Defendant of the basic elements of negligent homicide. The Defendant informed the court that she had no questions about the elements of negligent homicide. We conclude that the requirements of La.Code Crim.P. art. 556.1 were satisfied.

The Defendant claims also that the trial court should not have accepted her guilty plea as it was neither intelligent nor voluntary. She claims her decision to plead was based upon a belief that the trial court would conduct a sentencing hearing prior to determining her sentence. She states, prior to entering her plea, she was told that she would get a presentence hearing. Thus, she insists, she entered the plea "under the belief that the entire sentencing range would be considered and that, as is the appropriate procedure, the trial court would withhold its decision until after a hearing on the sentence could be had." As a consequence of this misinformation and the lack of a sentencing hearing, the Defendant claims she "did not receive a lesser or

4

suspended sentence which she had been led to believe was a possibility and instead received the maximum sentence."

The only evidence cited by the Defendant in support of this claim is information alleged in the second motion to reconsider sentence filed on March 3, 2003. In the motion to reconsider, defense counsel simply alleges that prior to her plea, the Defendant was told she would get a hearing before being sentenced. The Defendant does not allege who told her such. The Defendant further stated that at sentencing, her attorney told her she would not get the presentence hearing because the judge said he had everything he needed.

After reviewing the guilty plea colloquy, we conclude neither the trial court nor the State told the Defendant she would receive a hearing prior to being sentenced. After the Defendant's guilty plea was accepted, the trial court ordered a presentence investigation report and set a sentencing date. Although the trial court ordered a presentence investigation report, it did not indicate a hearing would be held prior to sentencing. Furthermore, the trial court ordered the report *after* the Defendant's guilty plea was accepted. *Before* the Defendant's plea was accepted, the trial court asked her if there were any plea agreements, recommendations or promises that had not been addressed by the trial court. The Defendant replied, "No sir." This court has stated the following regarding the determination that a guilty plea is constitutionally infirm:

> Once sentence has been imposed, a defendant may only withdraw his guilty plea if he is able to show that it is constitutionally infirm. *Id.* . . . This court in *State v. Readoux*, 614 So.2d 175, 176 (La.App. 3 Cir. 1993), explained what constitutes a constitutionally infirm guilty plea:
>
>> A guilty plea is invalid, or constitutionally infirm, when a defendant is induced to enter a plea of guilty by a plea bargain agreement, or what he reasonably or justifiably believes was a plea bargain agreement, and the terms of the bargain are not satisfied. It is well settled that *if a defendant's misunderstanding is not induced by or attributed to representations made by the district attorney or the trial court*, there is no ground for invalidating the

5

guilty plea.

(Emphasis added) (citations omitted).

> The record is clear that any misunderstanding on the part of the defendant was not induced by or attributed to anything stated to him by the state or the trial court. . . . A misunderstanding between a defendant and his counsel does not have the same implications as a breached plea bargain, and therefore, such a misunderstanding will not render the guilty plea invalid. *Id.*

> The defendant argues that he was induced to enter the guilty plea, not because of a misunderstanding between himself and Mr. DeSalvo [the defendant's attorney], but because of fraud. In other words, he contends that Mr. DeSalvo misrepresented the terms of the plea bargain to him and continued to misrepresent those terms during the *Boykinization* process. He contends that but for this fraudulent misrepresentation, he would not have entered a guilty plea. We note that it is well-settled in the jurisprudence of this state that "when a guilty plea is induced . . . by what a defendant justifiably believes is a plea bargain, and that bargain is not kept, defendant is denied due process of law because the guilty plea was not freely and knowingly given." *State v. Hayes*, 423 So.2d 1111, 1114 (La.1982). We must determine in this case whether the trial court erred in concluding that the defendant did not justifiably believe his plea bargain contained the specific promises that he allegedly was led to believe it contained.

*State v. Hidalgo*, 96-403, pp. 4-5 (La.App. 3 Cir. 11/6/96), 684 So.2d 26, 29.

As discussed previously, the Defendant does not allege nor does the record show the trial court or the State told the Defendant she would have a hearing prior to being sentenced. In fact, the Defendant makes no allegation as to who led her to believe she would have a sentencing hearing. Defendant has not shown her attorney led her to believe she was entering the plea with the agreement that a sentencing hearing would be held.

The trial court ordered a presentence investigation report. Prior to sentencing, the trial court asked defense counsel if he had reviewed the presentence report and if he had anything to add or take away from it. Defense counsel stated he had reviewed the report and had nothing to add or take away from it. The trial court proceeded with sentencing, stating he had reviewed the entire record, the presentence report, plus

6

many letters and statements submitted on behalf of the Defendant. The trial court stated he had considered all of the above in determining the sentence to be imposed. It proceeded to give ample reasons for the sentence imposed. As shown at the guilty plea proceeding, the trial court was aware of the sentencing range for negligent homicide.

Defendant further claims the trial court erred in denying her second motion to reconsider sentence, which was entitled, "Motion to Reconsider Sentence Pursuant to Louisiana Code of Criminal Procedure, Art. 881.1." The trial court denied the motion without a hearing by simply writing, "Motion to Reconsider Sentence - Denied." According to appellate counsel, this second motion was filed because the first motion to reconsider was "a perfunctory motion which stated no specific facts particular to this case and which only made the conclusory statement" that the sentence was excessive. The second motion to reconsider, appellate counsel claims, included facts which should have been considered by the trial court. Instead, the trial court denied the motion without giving a reason and without giving a hearing. Appellate counsel incorporates the argument made in his previous assignment that the Defendant should have been given an opportunity to present evidence prior to sentencing. Based on the above arguments, the Defendant requests this court vacate her sentence and remand the case for a hearing on her second motion to reconsider sentence.

Louisiana Code Criminal Procedure Article 881.1(C) states that a trial court may deny a motion to reconsider sentence without a contradictory hearing. Thus, it is clear the trial court did not err in denying the second motion to reconsider sentence without a hearing.

**EXCESSIVENESS OF SENTENCE**

The Defendant claims the trial court erred in imposing an excessive sentence.

The Defendant was originally charged with and pled guilty to negligent homicide.[1]
The possible penalty for negligent homicide is imprisonment with or without hard labor for not more than five years and/or a fine of not more than $5,000.00. La.R.S. 14:32(C). Defendant was sentenced to the maximum term of imprisonment of five years at hard labor. No fine was imposed.

The trial court gave the following reasons for the sentence imposed:

BY THE COURT:

All right. The court notes that it has reviewed the entire record and file presented to it in this case, plus the pre-sentence report, plus many, many letters, and, statements submitted on behalf of Ms. Hughes. All of those things have been taken into consideration, and, considered in determining sentence this morning. Ms. Hughes appears before the court on the charge of -- for sentencing on the charge of negligent homicide. The court notes that Ms. Hughes is 37 years old. The facts of this case are that Ms. Hughes and her husband had a heated argument on January 15, 2002. The argument began at Wal-Mart in DeRidder. She left Wal-Mart and took her children to her residence then went to her husband's residence in DeRidder where they argued some more. She told him at this point she was going to end her life. She left in her Cadillac traveling east on Highway 3226 toward Rosepine. While traveling she called her husband by cell phone and told him that she had almost done it and would finish it at the next curve. Mr. Hughes, her husband, said he then heard her screaming and sounds of a crash. Witnesses state she was driving at a high rate of speed and recklessly. She had forced one vehicle off the road earlier, she struck the front driver's door of a GMC truck driven by Roger D. Busby. Debris was thrown a hundred and fifty yards from the point of impact. Investigators determined her speed to be at 110 miles per hour when it struck the truck. Mr. Busby died at the scene of the wreck. On interview, on November 18, 2002, at the probation office, the court notes, Ms. Hughes expressed extreme regret and remorse for her actions and indicated that she had visited the cross even that Mr. Busby's family had placed at the scene of the wreck. She asked for forgiveness from the family and stated that she did not intend to hurt anyone. There was a plea agreement in this case wherein the State accepted a plea to negligent homicide. Ms. Hughes was originally charged with manslaughter. There were no recommendations made in this case. Pre-sentence investigation was ordered and the court has reviewed that pre-sentence investigation and taken all the facts presented in that investigation into consideration in

---

[1]In his reasons for the sentence imposed, the trial judge stated the Defendant was originally charged with manslaughter. Defense counsel corrected the trial court, stating that although the Defendant was arrested for manslaughter, the grand jury returned a true bill for negligent homicide. The trial court concurred with the correction.

determining sentence in this case. The court has reviewed many, many letters submitted on behalf of Ms. Hughes in further determining sentence in this case.

BY MR. WESTERCHIL:

Your Honor, I don't mean to interrupt, but, I would like to point out one thing, she was arrested for the offense of manslaughter, however, the grand jury entered a true bill for negligent homicide, so, she never was formally charged by the grand jury, or, the District Attorney with manslaughter under bill of information, or, true bill of indictment from the grant jury, or, otherwise.

BY THE COURT:

I see, and, I stand corrected, for some reason I wrote that down that way, you are correct. She was charged with negligent homicide, she pled to negligent homicide.

BY MR. WESTERCHIL:

That's correct.

BY THE COURT:

Okay. I stand corrected on that. The court considered, further, the factors outlined under Article 894.1 of the Code of Criminal Procedure in determining sentence in this case. There was economic harm caused to the victims in this case not to mention all the emotional harm caused to the victim's family and the defendant's family for that matter. A father and provider for a wife and two children is now deceased as the result of what happened on that date. There are no substantial grounds tending to excuse or justify Ms. Hughes' criminal conduct. She did not act under strong provocation by the victim or anyone else. She acted on her own free will and accord. Ms. Hughes is 37 years old, married, and, has four children. She has filed for divorce my records indicate. The children are ages fourteen, twelve, sixteen, and, eighteen. Ms. Hughes is in good health. She has an employment record. She has primarily worked as a welder's helper in the year 2000 from what I have. Ms. Hughes has a twelfth grade education. She has no history of drug abuse. There is no prior criminal record. I have reviewed, as I said earlier, all the letters submitted on behalf of Ms. Hughes. I've also reviewed the statements submitted by Ms. Busby and her two children. I am cognizant of the present situation of the families on each side of this tragedy. The court notes that leniency has been requested of this court in imposing sentencing considering that Ms. Hughes has four children to provide for. The impact of this offense will live forever in the minds of those involved, certainly forever in the minds of the children of Ms. Busby, and, those of Ms. Hughes. The surviving spouse and children of Mr. Busby have had taken away the gift of love and support that only a father can provide for the rest of their lives. The total wanton and

reckless disregard for the lives and safety of others exhibited by Ms. Hughes' conduct in the manner in which she was driving in the operation of her motor vehicle on the date of this tragedy dictates a sentence that fits the nature of this offense, . . .

After citing the applicable factors set forth in La.Code Crim.P. art. 894.1, the Defendant argues the following in her brief to this court:

> Appellant has no history of a prior delinquency or criminal activity and has lead [sic] a law abiding life before the commission of the incident crime. There is no evidence that the circumstances leading to this event are likely to occur. As a first time offender, Appellant would likely respond affirmative to probationary period. Appellant and her four children would certainly suffer hardship as a result of a sentence of imprisonment.

Finally, Defendant notes that maximum sentences are usually reserved for cases involving the most serious violation of the offense and the worst type of offender. *State v. Kezerle*, 01-0079 (La.App. 3 Cir. 6/6/01), 789 So.2d 725, *writ denied*, 01-2011 (La. 6/7/02), 817 So.2d 1143.

We are cited to cases wherein maximum sentences for negligent homicide cases were affirmed, and where sentences for less than the five-year maximum term were affirmed. The supreme court has stated "[t]he only relevant question on review . . . [is] 'whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate .'" *State v. Cook*, 95-2784, p. 3 (La. 5/31/96), 674 So.2d 957, 959, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996). The trial court cited the applicable factors set forth in La.Code Crim.P. art. 894.1, noted Defendant's lack of a criminal record and letters of support in her favor; but, concluded Defendant's "wanton and reckless disregard for the lives and safety of others . . . dictates a sentence that fits the nature of this offense." The trial court did not abuse its discretion in sentencing this Defendant to the five-year maximum term of imprisonment.

## CONCLUSION

For the foregoing reasons, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-420

STATE OF LOUISIANA

VERSUS

CAROL M. HUGHES


THIBODEAUX, J., dissenting in part.


This court has consistently held:

> [A] maximum sentence is usually reserved for cases involving the most serious violation of the offense and the worst type of offender. Upon review of sentencing, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion.

*State v. Kezerle*, 01-0079, p. 2 (La.App. 3 Cir. 6/6/01), 789 So.2d 725, 727, *writ denied*, 2001-2011 (La. 6/7/02), 817 So.2d 1143.

A lesser sentence of three years at hard labor has been approved in factually similar cases. In *State v. Gregrich*, 99-178 (La.App. 3 Cir. 10/13/99), 745 So.2d 694, this court upheld a three-year hard labor sentence imposed for negligent homicide. Gregrich was originally charged with vehicular homicide,[1] D.W.I. (first offense), and operating a motor vehicle on the left side of the centerline. Gregrich pled guilty, however, to the *reduced* charge of negligent homicide and to DWI, first offense. While traveling on a Louisiana highway, Gregrich crossed the centerline and struck the victim's vehicle. The victim died as a result of the accident. Testing after

---

[1] Vehicular homicide carries a penalty of not less than two nor more than *twenty* years, with at least one year without the benefit of probation, parole, or suspension of sentence.

the accident revealed Gregrich's blood-alcohol content was .18 percent and revealed cocaine metabolites in her system.

In *State v. Clark*, 529 So.2d 1353 (La.App. 5 Cir. 1988), the fifth circuit upheld a three-year hard labor sentence for a defendant originally charged with vehicular homicide but found guilty of the reduced charge of negligent homicide. Clark, driving under the influence of alcohol, failed to yield to traffic and ran through a stop sign, colliding with the victim's vehicle. The victim later died as a result of the accident. In its excessive sentence review, the court of appeal noted that he had *previous* convictions for driving while intoxicated, misdemeanor theft, and disturbing the peace. Clark also had a history of substance abuse and tried to blame his passenger for the collision. *See also State v. Jackson*, 452 So.2d 1250 (La.App. 2 Cir.), *writ denied*, 457 So.2d 17 (La.1984), in which a three-year hard labor sentence was upheld for a conviction of negligent homicide. Jackson was traveling at a high rate of speed and was under the influence of alcohol when she ran a red light and subsequently failed to negotiate a curve, landing her car approximately 280 feet from the roadway. One person was killed in the accident and another was injured in the accident. In its excessive sentence review, the court noted Jackson's lengthy criminal record, which included the offense of drinking and driving. *See also State v. Bailey*, 457 So.2d 94 (La.App. 4 Cir. 1984), where the fourth circuit upheld a three-year hard labor sentence and a $2,000.00 fine on a person convicted as charged of negligent homicide. Bailey was driving at a high rate of speed and was under the influence of alcohol when his vehicle sideswiped one vehicle and collided head-on with another. A three-year-old child died as a result of the accident. *See also State v. Spence*, 418 So.2d 583 (La.1982), where Spence was convicted of two counts of negligent homicide and received two concurrent three-year sentences, *suspended,* and three years of supervised probation. Spence was traveling at a high rate of speed while

2

being pursued by police when he collided with another vehicle, killing two of its passengers. Spence was nineteen years old and was under the influence of alcohol.

Considering the above cases, I conclude that the trial court abused its discretion. Alcohol was not a factor in this case, as in *Gregrich, Clark, Jackson, Bailey*, and *Spence*. The Defendant, Ms. Hughes, has an unblemished criminal record, unlike the defendants in *Clark* and *Jackson*. Yet, in all of these cases, the defendants received *less than* the maximum sentence. Here, the Defendant was charged with and pled guilty to negligent homicide. She received no benefit from her plea bargain.

The imposition of a maximum sentence under the circumstances of this case is in derogation of the well-settled jurisprudential rule that a maximum sentence is reserved for the worst type of offender and the most serious violation of the offense. Indeed, the five year maximum "makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeful and needless imposition of pain and suffering." *State v. Wilson*, 96-1392, p. 3 (La. 12/13/96), 685 So.2d 1063, 1065, *citing Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909 (1976).

Our decision today effectively transforms the sentence for an offense with a *range* of penalties to a *minimum mandatory* sentence. The majority justifies its decision by a platitudinous reference to the "broad sentencing discretion" of a trial court. True, a trial court has such discretion, but that discretion must be supported by sound legal and factual bases. There is no support for the majority's conclusion today, except for a reference to the trial court's consideration of the factors in La.Code Crim.P. art. 894.1. Is the articulation of these factors the only thing that is necessary to immunize a sentence from effective review by an appellate court? Apparently so. The majority recognizes the existence of cases where the circumstances were far more egregious than this case. Yet, it refuses to discuss them, I suspect, because it cannot reconcile this sentence with the sentences in those cases *Gregrich, Clark, Jackson,*

3

*Bailey,* and *Spence*, cannot justify the disproportionality of the sentence in this case with these cases, or simply does not think proportionality is a relevant factor in assessing whether a trial court's discretion has been abused. In so doing, it has effectively foreclosed any meaningful appellate review of sentences. We have, in reality, abdicated our responsibility as an appellate court.

My views are not meant to deprecate the harm done to Mr. Busby's family nor is it meant to condone the inexcusable conduct of the Defendant. I have carefully reviewed the record and my position is consistent with precedent and established jurisprudential tenets. Furthermore, I have reviewed the Pre-Sentence Investigation report which demonstrates a lack of any juvenile or adult criminal record and a showing of genuine remorse by the Defendant. Indisputably, her actions were fatal to Mr. Busby; however, her reckless driving was intended as an act of suicide, albeit unsuccessful. Finally, we should not ignore the level of support the Defendant received from friends, family members, and community and church leaders. Clearly, this case is not one where the "worst type of offender" is involved. Consequently, the legislature provided a range within which to fit an offender such as Ms. Hughes, a range which does not warrant the maximum term.

For the foregoing reasons, I respectfully dissent.