608 So.2d 966 (1992)
STATE of Louisiana
v.
Lawrence BERNARD.
No. 92-KK-0997.
Supreme Court of Louisiana.
November 12, 1992.
*967 Clyde D. Merritt, Nicholas J. Trenticosta, New Orleans, for applicant.
Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Gregory G. Hangartner, Michael F. Bollman, Jack Peebles, Asst. Dist. Attys., for respondents.
J. Michael Small, Alexandria, Rebecca L. Hudsmith, Shreveport, for Thomas Silman amicus curiae.
Helen G. Berrigan, New Orleans, for Jefferson Parish Indigent Defender Bd. for amicus curiae.
LEMMON, Justice.
The principal issue in the pretrial phase of this death penalty case is the admissibility of victim impact evidence by the prosecutor in the capital sentencing hearing.[1]
Defendant was indicted for first degree murder for striking John Davis on the head with a pipe during the perpetration of an armed robbery on the street near Davis' home. According to the prosecutor, Davis died from the blow four days later.
During pretrial proceedings the prosecutor notified defense counsel that he intended to introduce victim impact evidence in the sentencing phase of the bifurcated trial. The prosecutor did not state in the notice or otherwise indicate in the record before this court the exact evidence sought to be introduced.
The trial court, after a hearing on the general admissibility of victim impact evidence, concluded that such evidence is not admissible. The court reasoned that La. Code Crim.Proc. art. 905.2's language focusing the capital sentencing hearing on the circumstances of the offense and the character and propensities of the offender excluded evidence of the impact of the crime on the victim or the victim's family.[2]
The prosecutor then applied to the court of appeal for supervisory writs. The intermediate court reversed the lower court's ruling, stating in an unpublished memorandum opinion:
The evidence sought to be admitted during the penalty phase of the defendant's trial is not prohibited by the Eighth Amendment. Payne v. Tennessee, ___, U.S. ___, 111 S.Ct. 2597 [115 L.Ed.2d 720] (1991). Payne does not require the existence of a statute specifically authorizing the admission of such evidence in order for the evidence to be admitted. Because victim impact evidence comprises part of the "circumstances of the offense", such evidence would be admissible during the penalty phase of a capital trial under C.Cr.P. art. 905.2. (emphasis in original).
We granted certiorari to review this judgment. 596 So.2d 541.
The types of victim impact evidence generally addressed in death penalty decisions *968 include evidence of the character of the victim, evidence of the emotional, physical and economic impact of the crime on the family of the murdered victim, and evidence of the survivors' opinions of the crime and of the murderer. See Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). Victim impact evidence, by its very nature, is emotionally charged material which involves the risk of injecting arbitrary factors into a capital sentencing hearing.
The Supreme Court addressed the effect of victim impact evidence in a capital sentencing hearing in Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). The defendant and an accomplice had broken into the home of an elderly couple to steal money to buy heroin, had bound and gagged the victims, and had stabbed them repeatedly with a kitchen knife. During the sentencing phase the prosecutor presented to the jury a presentence report prepared in accordance with state law. The report included a victim impact statement containing descriptions of the personal characteristics of the victims, the severe emotional impact of the crimes on the surviving family members, and the survivors' opinions of the crimes and the defendant.
The Court, recognizing that the evidence considered by the jury during the sentencing phase must have "some bearing on the defendant's personal responsibility and moral guilt," held that victim impact evidence describing the personal characteristics of the victims and the reactions of their families to the crimes is "irrelevant to a capital sentencing decision." Id. at 502, 107 S.Ct. at 2533. The admission of this type of evidence, reasoned the Court, "creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner." Id. at 503, 107 S.Ct. at 2533. The requirement of individualized sentencing in capital cases precludes the jury from focusing on anything other than the defendant, and victim impact evidence focuses "not on the defendant, but on the character and reputation of the victim and the effect on his family." Id. at 504, 107 S.Ct. at 2534. This sort of evidence "may be wholly unrelated to the blameworthiness of a particular defendant" and may inflame the jury, and therefore cannot be heard by a jury choosing between life and death. Id. at 504, 107 S.Ct. at 2534.
In South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), the Court extended Booth to prohibit prosecutorial argument in the nature of victim impact evidence.
The defendant and three companions savagely beat the victim in a public park, and the defendant stabbed him with a knife. The victim, an unemployed mentally deficient man, often spoke to people about religion and carried several bags containing religious articles. After the beating, the defendant searched the bags for something worth stealing.
During his closing argument the prosecutor read from one of the victim's religious books and argued that the victim possessed a voter registration card and was a good citizen who believed in the community.
The Court held that the prosecutor's comments, referring to the victim's personal characteristics, violated the Eighth Amendment because the evidence was neither relevant to the defendant's moral culpability nor related to the circumstances of the crime. The Court stated that "[a]llowing the jury to rely on [victim impact evidence] could result in imposing the death sentence because of factors about which the defendant was unaware, and that were irrelevant to the decision to kill." Id. at 811, 109 S.Ct. at 2210-11 (quoting Booth v. Maryland, 482 U.S. 496, 505, 107 S.Ct. 2529, 2534, 96 L.Ed.2d 440 (1987)).
In Payne v. Tennessee, 501 U.S. ___, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the Court overruled much of Booth and all of Gathers insofar as those decisions held that there was a per se Eighth Amendment bar to the introduction of victim impact evidence.
The defendant, after spending much of the day drinking alcohol and injecting cocaine, entered the apartment of the victim-mother and her two young children. When *969 the mother resisted the defendant's sexual advances, he became violent and attacked her and her children with a butcher knife. The mother sustained a total of eighty-four separate knife wounds, dying from excessive blood loss. One child died from numerous stab wounds, but the other survived the assault.
During the penalty phase of the trial, the adult victim's mother testified as follows regarding the effect on the surviving child:
He cries for his mom. He doesn't seem to understand why she doesn't come home. And he cries for his sister Lacie. He comes to me many times during the week and asks me, Grandmama, do you miss my Lacie. And I tell him yes. He says, I'm worried about my Lacie.
In addition to these brief comments, the prosecutor made extensive remarks during the closing argument about the pain and suffering of the surviving family members. The prosecutor also commented directly on the fact that the victims were not given an opportunity to present character witnesses on their behalf as the defendant was allowed to do.
The Tennessee Supreme Court held that the testimony was irrelevant, but not so prejudicial as to create a risk of an arbitrary imposition of the death penalty, and that the prosecutor's comments were relevant to the personal responsibility and moral guilt of the defendant.
The United States Supreme Court affirmed. Analyzing the Booth premises that (1) evidence relating to a particular victim or to the harm that a capital defendant causes a victim's family does not in general reflect on the defendant's "blameworthiness" and that (2) only evidence relating to the defendant's blameworthiness is relevant to the capital sentencing decision, the Court stated that the harm resulting from a particular crime is an important concern of the criminal law. The Court noted that legislators grade the severity of crimes according to the harm done to the victim and that the sentencing authority in noncapital cases properly considers the actual harm caused by the particular crime, concluding that "a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant." Id. at ___, 111 S.Ct. at 2608. Further observing that no mitigating evidence can be excluded from the jury's purview, the Court reasoned that the prosecutor should be allowed to counter defense evidence with testimony and argument "designed to show ... each victim's uniqueness as an individual human being." Id. at ___, 111 S.Ct. at 2607. Accordingly, the Court held:
[I]f the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.
Id. at ___, 111 S.Ct. at 2609.
Justice O'Connor concurred, noting that the majority was not ruling that victim impact evidence must be admitted, or even that it should be admitted, but only that the Eighth Amendment presents no per se bar to its introduction. She added that "[i]f, in a particular case, a witness' testimony or a prosecutor's remark so infects the sentencing proceeding as to render it fundamentally unfair, the defendant may seek appropriate relief under the Due Process Clause of the Fourteenth Amendment." Id. at ___, 111 S.Ct. at 2612 (O'Connor, J., concurring).
Justice Souter also concurred, observing that while Booth and Gathers focused on the premise that victim impact evidence will necessarily deal with facts which were unknown to the defendant at the time of the murder, it is "virtually inevitable" that a murderer realizes at the time of the intentional crime that "death is always to a `unique' individual, and harm to some group of survivors is a consequence" of his *970 homicidal act. Id. at ___, 111 S.Ct. at 2616. He commented further:
Murder has foreseeable consequences. When it happens, it is always to distinct individuals, and after it happens other victims are left behind. Every defendant knows if endowed with the mental competence for criminal responsibility, that the life he will take by his homicidal behavior is that of a unique person, like himself, and that the person to be killed probably has close associates, "survivors," who will suffer harms and deprivations from the victim's death. Just as defendants know that they are not faceless human ciphers, they know that their victims are not valueless fungibles, and just as defendants appreciate the web of relationships and dependencies in which they live, they know that their victims are not human islands, but individuals with parents or children, spouses or friends or dependents. Thus, when a defendant chooses to kill, or to raise the risk of a victim's death, this choice necessarily relates to a whole human being and threatens an association of others, who may be distinctly hurt....
That foreseeability of the killing's consequences imbues them with direct moral relevance ... and evidence of the specific harm caused when a homicidal risk is realized is nothing more than evidence of the risk that the defendant originally chose to run despite the kinds of consequences that were obviously foreseeable. It is morally both defensible and appropriate to consider such evidence when penalizing a murderer, like other criminals, in light of common knowledge and the moral responsibility that such knowledge entails. Any failure to take account of a victim's individuality and the effects of his death upon close survivors would thus more appropriately be called an act of lenity than their consideration an invitation to arbitrary sentencing.
Id. at ___-___, 111 S.Ct. at 2615-2616 (Souter, Jr., concurring) (citations omitted).
Under Payne's holding that the Eighth Amendment does not per se prohibit the use of victim impact evidence, a state statute may authorize the use of such evidence as long as the particular evidence does not result either in a violation of due process by injecting arbitrary factors which render the sentencing hearing fundamentally unfair or in a violation of some provision of the state constitution. The initial inquiry in this case, therefore, is whether Louisiana's capital sentencing statute authorizes the use of victim impact evidence. If so, the next inquiry is whether the statute, as applied in the particular case, is unconstitutional under the federal or state constitution.
The Louisiana capital sentencing statute enacted in 1976 limits the evidence presented by the prosecutor in the sentencing hearing to that which is relevant to the circumstances of the murder or to the character and propensities of the murderer.[3] La.Code Crim.Proc. art. 905.2. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La.Code Evid. art. 401. In allowing only evidence which is relevant to the circumstances of the offense or the character and propensities of the offender, Article 905.2 is narrower than the Tennessee statute in Payne, which allowed evidence "relevant to the punishment."
Evidence of the victim's survivors' opinions about the crime and the murderer is clearly irrelevant to any issue in a capital sentencing hearing. Even the dissenters in Booth conceded that it was inappropriate to allow the victim's family to express their views on whether, for example, the defendant can be rehabilitated. While the dissenters pointed out that this inappropriateness was not an inherent fault in all victim impact evidence, it is difficult to see how the victim's survivors' subjective opinions about the heinousness of the murder or the *971 evil nature of the murderer's character can ever be relevant to the sentencing decision, especially after the prosecutor has presented all available objective evidence bearing on the circumstances of the offense and the character and propensities of the offender.[4]
Whether evidence of the character of the victim or the impact of the crime on the victim's family is relevant to the circumstances of the offense or the character and propensities of the offender presents a closer question. As Justice Souter noted in Payne, any person of basic understanding knows that every murder victim is a unique individual and that the murder will cause some emotional, physical or economic harm to some group of survivors. Since a specific intent murderer either knew or reasonably should have foreseen some of the consequences of his victim's death, this general knowledge at the time of the crime is a fact bearing on the murderer's moral culpability and to that extent is relevant both to the circumstances of the crime and to the murderer's character and propensities.[5] Thus, the prosecutor, within the bounds of relevance under the statute, may introduce a limited amount of general evidence providing identity to the victim and a limited amount of general evidence demonstrating harm to the victim's survivors. Indeed, some facts about the victim, including some personal characteristics, are frequently developed at the guilt phase of the trial (on issues such as self defense and justification) and may be considered by the jury at the penalty phase.[6] La.Code Crim.Proc. art. 905.2.
Informing the jury that the victim had some identity or left some survivors merely states what any person would reasonably expect and can hardly be viewed as injecting an arbitrary factor into a sentencing hearing. But the more detailed the evidence relating to the character of the victim or the harm to the survivors, the less relevant is such evidence to the circumstances of the crime or the character and propensities of the defendant. And the more marginal the relevance of the victim impact evidence, the greater is the risk that an arbitrary factor will be injected into the jury's sentencing deliberations.[7] Drawing a bright line in this area is very difficult, particularly with no specific evidence having been presented in this case.
Reference to previous cases in which the effect of some types of victim impact evidence under the present capital sentencing statute has been considered by this court may be helpful.[8] In State v. Prejean, 379 So.2d 240 (La.1979), this court declined to reverse a death penalty merely because the victim's wife had testified that the victim's death left her with two children to support.
*972 In State v. Williams, 392 So.2d 619 (La. 1980), this court concluded that the mere fact the victim's wife testified in the sentencing hearing (informing the jury that the victim had been a loyal husband for nineteen years and had supported her and their three children despite his partial paralysis) did not interject an arbitrary factor into the proceedings.
In State v. Rushing, 464 So.2d 268 (La. 1985), four witnesses presented by the prosecutor in the sentencing hearing expressed their opinions as to the appropriateness of the death penalty for the defendant. This court correctly held that such evidence is prohibited and should not have been allowed. Nevertheless, this court declined to reverse the sentence, stating:
Considering no witness expressed an unqualified opinion that defendant should be sentenced to death and four of the witnesses stated he should not be sentenced to death, we do not believe nor are we of the opinion that Ruby Gaspard's testimony standing alone injected an arbitrary factor such that it influenced the jury to return with a death sentence.[9]
Id. at 276. In effect, this court held the error was harmless beyond a reasonable doubt.[10]
In order to provide general guidance to trial courts in capital sentencing hearings, we reiterate that some evidence of the murder victim's character and of the impact of the murder on the victim's survivors is admissible as relevant to the circumstances of the offense or to the character and propensities of the offender. To the extent that such evidence reasonably shows that the murderer knew or should have known that the victim, like himself, was a unique person and that the victim had or probably had survivors, and the murderer nevertheless proceeded to commit the crime, the evidence bears on the murderer's character traits and moral culpability, and is relevant to his character and propensities as well as to the circumstances of the crime. However, introduction of detailed descriptions of the good qualities of the victim or particularized narrations of the emotional, psychological and economic sufferings of the victim's survivors, which go beyond the purpose of showing the victim's individual identity and verifying the existence of survivors reasonably expected to grieve and suffer because of the murder, treads dangerously on the possibility of reversal because of the influence of arbitrary factors on the jury's sentencing decision. Whether or not particular evidence renders a hearing so fundamentally unfair as to amount to a due process violation must be determined on a case-by-case basis.[11]
Finally, we reiterate that the use of victim impact evidence requires pretrial notice to the defense. This type of evidence does not go to proof of an essential element of the crime, and the defense, unless notified of the prospective use of such evidence, has no way of knowing that preparation *973 will be necessary to meet this evidence. As in the use of other crimes evidence, the defense, upon request, is entitled to notice of the particular victim impact evidence sought to be introduced by the prosecutor and to a pretrial determination of the admissibility of the particular evidence.
Accordingly, the judgment of the court of appeal authorizing the general admissibility of victim impact evidence is modified as set out in this opinion, and the case is remanded to the district court for notice of the specific evidence sought to be introduced by the prosecutor and a hearing on the admissibility of that evidence.
WATSON, J., concurs and assigns reasons.
COLE, J., concurs in the result which remands this case to the district court for notice of the evidence sought to be introduced and a hearing on the admissibility of that evidence.
DENNIS, J., dissents with reasons.
WATSON, Justice, concurring:
I agree generally with the concepts expressed by the majority opinion. However, I would restate the decision of the court, as follows:
Victim impact evidence is not generally admissible because of the provisions of C.Cr.P. art. 905.2. Evidence, which shows the victim's individual identity and verifies the existence of survivors reasonably expected to grieve and suffer because of the victim's death, may be received after due notice to the defendant.
I respectfully concur.
DENNIS, Justice, dissenting.
I respectfully dissent for the reasons assigned in State v. Jackson, 608 So.2d 949 (La.1992).
NOTES
[1] This case was consolidated for argument on this issue with State v. Jackson, 608 So.2d 949 (La.1992), decided this day.
[2] Article 905.2 provides:

The sentencing hearing shall focus on the circumstances of the offense and the character and propensities of the offender. The hearing shall be conducted according to the rules of evidence. Evidence relative to aggravating or mitigating circumstances shall be relevant irrespective of whether the defendant places his character at issue. Insofar as applicable, the procedure shall be the same as that provided for trial in the Code of Criminal Procedure. The jury may consider any evidence offered at the trial on the issue of guilt. The defendant may testify in his own behalf. In the event of retrial the defendant's testimony shall not be admissible except for purposes of impeachment. (emphasis added).
[3] Article 905.2 expands the rules of evidence in capital sentencing hearings in the area of character evidence. State v. Sawyer, 422 So.2d 95 (La.1982). However, Article 905.2 also limits the scope of the hearing.
[4] There was no evidence of this type involved in the Payne case.
[5] Justice Scalia pointed out in dissent in Booth:

It seems to me, howeverand, I think, to most of mankindthat the amount of harm one causes does bear upon the extent of his "personal responsibility." We may take away the license of a driver who goes 60 miles an hour on a residential street; but we will put him in jail for manslaughter if, though his moral guilt is no greater, he is unlucky enough to kill someone during the escapade.
Nor, despite what the Court says today, do we depart from this principle where capital punishment is concerned. The Court's opinion does not explain why a defendant's eligibility for the death sentence can (and always does) turn upon considerations not relevant to his moral guilt. If a bank robber aims his gun at a guard, pulls the trigger, and kills his target, he may be put to death. If the gun unexpectedly misfires, he may not. His moral guilt in both cases is identical, but his responsibility in the former is greater. (emphasis in original).
Booth v. Maryland, 482 U.S. 496, 519, 107 S.Ct. 2529, 2541, 96 L.Ed.2d 440 (1987) (Scalia, J. dissenting).
[6] Less frequently, some facts about the survivors may be established in the guilt phase.
[7] Victim worth evidence, being a two-edged sword, is particularly dangerous. If the prosecutor can introduce evidence of the degree of the victim's social standing or business or professional success, the defense arguably will be obliged to present degrading evidence about the murder victim in the appropriate case in order to show lack of victim worth.
[8] La.Sup.Ct.R. 28, adopted under the mandate of La.Code Crim.Proc. art. 905.9, requires this court to review every death sentence in order to determine whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor.
[9] Three prosecution witnesses and two defense witnesses expressed their opinions that the death sentence was not appropriate in the particular case. The fourth prosecution witness, Ruby Gaspard (the victim's aunt), did not express an unqualified opinion that the defendant should be sentenced to death, but stated: "My mother always told me vengeance is mine sayeth the Lord. But I also believe an eye for an eye."
[10] The Rushing decision by this court preceded Booth. After Booth (but before Payne), the federal appellate court reversed the death penalty, pointing out other inflammatory evidence, emotionally delivered by the victim's aunt, that had not been discussed in this court's opinion. Rushing v. Butler, 868 F.2d 800 (5th Cir.1989).
[11] In Dawson v. Delaware, ___, U.S. ___, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992), the Court held that evidence of the defendant's membership in a white racist prison gang (the Aryan Brotherhood) was not relevant character evidence in the capital sentencing hearing because evidence of racial bias was not tied in any way to the murder of the victim who, like the defendant, was white. The Court concluded that the evidence, which proved nothing more than the defendant's abstract beliefs which had no bearing on the issue being tried, violated his First Amendment rights. The Court, however, did not reverse the death penalty, but remanded the case for a harmless error analysis, apparently to determine whether the irrelevant character evidence so infected the hearing as to render the proceeding fundamentally unfair and violative of due process.