778 So.2d 549 (2001)
STATE of Louisiana
v.
Lester GOMEZ.
Nos. 2000-KK-0566, 2000-KK-0677.
Supreme Court of Louisiana.
January 17, 2001.
*550 Dorothy G. daPonte, Counsel for Applicant (No. 00-KK-0566).
Richard P. Ieyoub, Attorney General, Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry M. Boudreaux, Gretna, Allison L. Monahan, Counsel for Applicant.
Michael Riehlmann, New Orleans, Dorothy G. daPonte, Counsel for Respondent (No. 00-KK-0677).
John H. Holdridge, New Orleans, Counsel for Louisiana Association Criminal Degense (Amicus Curiae).
Prior report: 757 So.2d 647.
TRAYLOR, J.
In these two consolidated cases, we are called upon to answer the following questions: (1) whether the amendment to La. C.Cr.P. art. 905.2(A) is tailored to adequately address the sentencing procedures in a capital case where the victim of the crime has survived; and (2) whether La. C.Cr.P. art. 905.2(A) precludes testimony from the victims' mental health professionals. After a through review of the article and the legislative history of Article 905.2(A), we conclude that the legislature has not yet specifically addressed the sentencing procedures for a capital case where the victim of the crime survives. We also conclude that La.C.Cr.P. art. 905.2 limits testimony to only those persons specifically enumerated therein.

FACTS AND PROCEDURAL HISTORY
Defendant, Lester Gomez, was charged in a two-count grand jury indictment with the aggravated rapes of two boys under the age of twelve years in violation of La.R.S. 14:42(A)(4).[1] In the course of pretrial discovery, the state gave notice that it intended to introduce victim impact evidence at the sentencing hearing, if trial reached that stage, from the mothers of the victims and from the mental health professionals treating the victims. The state contends that the witnesses are prepared to testify that the boys blame themselves for the offenses and that the victims suffer from various emotional and adjustment disorders as a result of the alleged sexual assaults. The motion also gave notice of the state's intent to establish the economic loss suffered by the family of one of the victims arising out of the costs of psychological counseling for the boy. In addition, the motion expressly reserved the state's right to call both victims to testify on their own behalf as to the impact of the alleged crimes.
In response to defendant's motion to strike, the trial court ruled that the state could not call the victims' treating mental health professionals but could present the testimony of the victims' mothers or other family members. The trial court further *551 ordered the state to produce the family witnesses at a pre-trial hearing to determine the admissibility of their testimony. In separate orders, the court of appeal upheld the ruling of the district court excluding testimony from mental health professionals but permitting the testimony of the boys' mothers. State v. Gomez, 00-0105 (La.App. 5th Cir. 1/31/00) (unpublished). However, the court of appeal overturned the trial court's order requiring the state to produce the victims' mothers at a pre-trial hearing. State v. Gomez, 00-0124 (La.App. 5th Cir. 2/8/00) (unpublished). In separate applications to this Court, the state seeks review of the former order and the defendant challenges the latter ruling of the court of appeal.

DISCUSSION
When this Court in State v. Wilson, 96-1392 (12/13/96), 685 So.2d 1063 upheld the constitutionality of 1995 La.Acts 397, which amended La.R.S. 14:42(C) to provide for the possibility of capital punishment "in accordance with the determination of the jury" in the case of an aggravated rape of a child under the age of twelve years, we suggested that "the Legislature should immediately amend Articles 905 et seq. of the Code of Criminal Procedure (especially article 905.2) to clarify the sentencing procedure for an aggravated rape case in which the death sentence may be imposed." Wilson, 96-1392 at 1, 685 So.2d at 1074 (Victory, J., concurring). In response to Justice Victory's suggestion, the legislature amended La.C.Cr.P. art. 905.2(A) by 1999 La.Acts 783. Although the amendment broadened the scope of those persons who may testify at a capital sentencing hearing, the amendment fails to specifically address the sentencing procedures for a capital case which has not resulted in the death of the victim.
In his application to this Court, defendant argues that La.C.Cr.P. art. 905.2 does not provide for victim impact evidence in a capital rape trial. Defendant contends that the legislature has not provided any guidance for cases in which the victim survives. Conversely, the state maintains that La.C.Cr.P. art. 905.2 is applicable to all capital cases, irrespective of whether the victim dies, and submits that the purpose of the statute is to allow any and all evidence which is relevant to the impact which the crime had on the victim. The state also argues that it should be allowed to submit the testimony of the victims' mental healthcare providers as victim impact evidence. The state's position is that this Court's ruling in State v. Bernard, 608 So.2d 966 (La.1992) coupled with the amendment to La.C.Cr.P. art. 905.2 supports its position that any and all evidence regarding the character and propensities of the victim should be allowed during the penalty phase of the trial.
As in Bernard, we are therefore called upon to determine the extent to which, if any, the state may introduce victim-impact evidence relevant to the jury's sentencing determination in a capital case but for which the legislature has made no explicit and specific provision in La.C.Cr.P. art. 905.2(A). Thus, we first explore whether the amendment to La.C.Cr.P. art. 905.2(A) provides for victim impact evidence when the death of the victim does not result. Second, we will address the state's contention that it should be allowed to submit testimony of the victims' mental health professionals.

History of La.Code Cr.P. art. 905.2(A)
As originally enacted by 1976 La.Acts 694, La.C.Cr.P. art. 905.2 (now art. 905.2(A)) provided in pertinent part that the sentencing hearing of a capital case "shall focus on the circumstances of the offense and the character and propensities of the offender." Although the original version of art. 905.2 did not explicitly mention victim-impact evidence, this Court held in State v. Bernard, 608 So.2d 966, 972 (La.1992), that "some evidence of the murder victim's character and of the impact of the murder on the victim's survivors *552 is admissible as relevant to the circumstances of the offense or to the character and propensities of the offender." Our holding in State v. Bernard was based upon the decision of the United States Supreme Court in Payne v. Tennessee, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991), which acknowledged that "a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant." The Supreme Court thereby recognized that the state "has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family." Payne, 501 U.S. at 825, 111 S.Ct. at 2608 (internal quotation marks and citation omitted). We therefore concluded in Bernard that because "any person of basic understanding knows that every murder victim is a unique individual and that the murder will cause some emotional, physical or economic harm to some group of survivors .... the prosecutor, within the bounds of relevance under the statute, may introduce a limited amount of general evidence providing the identity to the victim and a limited amount of general evidence demonstrating harm to the victim's survivors." Bernard, 608 So.2d at 971.
In 1994, the legislature endorsed our holding in Bernard by amending La. C.Cr.P. art. 905.2 to provide that a capital sentencing hearing shall focus "on the circumstances of the offense, the character and propensities of the offender, and the impact that the death of the victim has had on the family members." 1994 La.Acts 14. Subsequent to the 1994 amendment, we had occasion to consider the scope of the amendment in State v. Frost, 97-1771 (La.12/1/98), 727 So.2d 417. In Frost, the state presented evidence at the defendant's capital sentencing hearing testimony from the victim's close friends as to the impact of the victim's death on their lives. While we ultimately determined that the error was harmless, Frost held that "[a]lthough the [witnesses] were very close to the victim, they [did] not qualify as `family' under either a traditional or a legal definition of the word." Frost, 97-1771 at 14, 727 So.2d at 429. Although the impact of the victim's death on close friends is arguably as relevant to assessing the moral culpability of the defendant's crime as the impact of the loss on members of the victim's immediate family, we resolved in Frost, as we had in Bernard, to "confine admissible victim impact testimony to that which is deemed relevant by the capital sentencing statute." Frost, 97-1771 at 14, 727 So.2d at 429-30; see also State v. Wessinger, 98-1234, p. 21 (La.5/28/99), 736 So.2d 162, 181 ("Because these individuals were not family of the victims under either a traditional or legal definition of the word, the testimony of these witnesses was indeed erroneously admitted.").
This Court decided Frost at a time of growing support for victims' rights in Louisiana. In 1998, voters approved an amendment of this state's constitution adding art. I, § 25 to guarantee that "[a]s defined by law, a victim of crime shall have the right to reasonable notice and to be present and heard during all critical stages of preconviction and postconviction proceedings...." In the following year, Senator Dardenne introduced Senate Bill 776 in the legislature to make comprehensive changes in existing law. As explained by its sponsor, the legislation was required "because of the constitutional amendment that brought Louisiana into a group of states that have adopted statewide amendments recognizing victims' rights .... this legislation is an attempt to bring the [victims' rights] statute in line with the constitution." Minutes, Senate Committee on Judiciary, April 27, 1999. The bill, which became 1999 La.Acts 783, substantially revised and reenacted the victim's rights *553 provisions of La.R.S. 46:1842-1844, and specifically implemented the mandate of La. Const. art. I, § 25 by defining a critical stage of a criminal proceeding as "any judicial proceeding at which there is a disposition of the charged offense or a lesser offense, or a sentence imposed pursuant thereto." La.R.S. 46:1842(2). The bill also amended La.C.E. art. 615 to exempt the victim of the offense, or the family of the victim, from the rule of sequestration, amended La.C.Cr.P. art. 877 to provide the victim with access to confidential presentence reports, added article 882.2 to the Code of Criminal Procedure to authorize in cases of actual pecuniary loss the award of restitution to the victim as part of any sentence imposed by the court, amended La.C.Cr.P. art. 886 to include restitution to the victim within its provisions for enforcement of unpaid costs and fines, and amended La.C.Cr.P. art. 905.2(A) to provide that a capital sentencing hearing in Louisiana shall focus on "the circumstances of the offense, the character and propensities of the offender, and the victim, and the impact that the death of the victim has had on family members, friends, and associates."
The legislature's recent amendment of La.C.Cr.P. art. 905.2(A) has unquestionably superceded our decisions in Frost and Wessinger with regard to those persons entitled to provide testimony as to the impact "that the death of the victim has had" on their lives. On the other hand, we find no evidence either in the express wording of 1999 La.Acts 783 or in its legislative history that the legislature contemplated or specifically addressed the appropriate procedures for a capital sentencing hearing for when the crime does not result in the death of the victim merely by providing that a capital sentencing hearing shall focus on the character and propensities of the victim as well as the defendant.

Interpretation of La.C.Cr.P. art. 905.2(A)
Interpreting La.C.Cr.P. art. 905.2(A), we must remain mindful of the framework the law gives us for statutory interpretation. It is well established that criminal statutes are to be strictly construed. La.R.S. 14:3. Any doubt as to the extent of the coverage of a criminal statute must be decided in favor of the accused and against the State. State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992). "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.C.C. art. 9. "The words of a law must be given their generally prevailing meaning." La.C.C. art. 11.
Currently, article 905.2(A), as amended by Acts 1999, No. 783, § 3 provides:

The sentencing hearing shall focus on the circumstances of the offense, the character and propensities of the offender, and the victim, and the impact that the death of the victim has had on family members, friends, and associates. Family members, friends, and associates may decline the right to testify but, after testifying for the state, shall be subject to cross-examination. The hearing shall be conducted according to the rules of evidence. Evidence relative to aggravating or mitigating circumstances shall be relevant irrespective of whether the defendant places his character at issue. Insofar as applicable, the procedure shall be the same as that provided for trial in the Code of Criminal Procedure. The jury may consider any evidence offered at the trial on the issue of guilt. The defendant may testify in his own behalf. In the event of retrial the defendant's testimony shall not be admissible except for the purposes of impeachment. (emphasis added)
Article 905.2(A) states that the sentencing hearing shall focus on the "circumstances of the offense, the character and propensities of the offender, and the victim, and the impact that the death of the victim has had on family members, friends and associates." *554 As written, article 905.2(A) provides for the testimony of family members, friends and associates only when the victim dies. It is our position that if the legislature intended to allow victim impact evidence in capital cases where the victim survives, it would have substituted the phrase "impact that the crime had on the victim and has had on the family members" in the place of the phrase "impact that the death had on the victim and has had on family members." Absent express legislative intent, this Court is confined to the words of the statute as written, victim impact evidence is only allowed where the crime results in the death of the victim.
Based on the above, we conclude that the trial court erred by allowing the victims' mothers' testimony. La.C.Cr.P. art. 905.2 does not provide for such testimony absent the death of the victim. Accordingly, the judgments of the trial court and the court of appeal, allowing the testimony of the victims' mothers is hereby reversed.

TESTIMONY OF HEALTHCARE PROVIDERS
Next, we explore the issue of whether La.C.Cr.P. art. 905.2 allows testimony from healthcare providers. La. C.Cr.P. art. 905.2(A) expressly permits testimony about the impact of the crime on the victim from persons outside of the immediate family only in cases in which the victim has died. As presently written, Louisiana's capital sentencing procedures do not permit testimony from mental health professionals as to their diagnosis and treatment of the victims although that testimony is otherwise relevant to an assessment of the impact of the crime on the victim. We note in this regard that the legislature has not expressly authorized testimony from mental health professionals as part of a victim-impact statement at sentencing in any criminal case. La.R.S. 46:1844(K). Similarly, because La.C.Cr.P. art. 905.2(A) principally addresses cases in which the victim has died and in which the defendant's moral culpability is measured in terms of human loss, we believe that the economic costs imposed on the victim's family by the offense, such as the expense of psychological therapy, are not relevant to character and propensities of either the offender or of the victim. See Payne, 501 U.S. at 827, 111 S.Ct. at 2609 ("[W]e now reject the view ... that a State may not permit the prosecutor to ... argue to the jury the human cost of the crime of which the defendant stands acquitted."). In the absence of express legislative sanction, evidence in that regard is therefore not admissible at a capital sentencing proceeding for aggravated rape, although it may form part of a victim-impact statement delivered before sentencing in a non-capital case. See La.R.S. 46:1844(K).
As stated above, the legislature has amended art. 905.2 to expand the scope of permissible witnesses to include friends and associates of the victim. Thus, if the legislature intended to include mental health providers, surely it would have done so when it expanded the list of enumerated persons who are permitted to testify. We must give great deference to the expressions of our legislature and therefore must hold that mental health professionals are precluded from testifying during the penalty phase of a capital case.
Accordingly, the judgments of the lower courts excluding testimony from the victims' mental health professionals are affirmed and the case is remanded to the trial court for further proceedings consistent with the views expressed herein.

DECREE
For the reasons assigned, the judgment of the trial court allowing the testimony of the victims' mothers is hereby reversed. The judgment of the trial court prohibiting testimony from the mental health professionals is affirmed. This case is remanded to the trial court for further proceedings consistent with this opinion.
*555 REVERSED IN PART; AFFIRMED IN PART.
VICTORY, J., dissents and assigns reasons.
VICTORY, J., dissenting.
The majority correctly concludes that the legislature, when it adopted and later amended La.C.Cr.P. art. 905.2(A), neither contemplated nor addressed the introduction of victim impact evidence in a capital case where the victim survives the offense. Article 905.2(A) is silent on the subject. That being the case, I believe the resolution of the issue before us is controlled by our existing case law.
In State v. Bernard, 608 So.2d 966 (La. 1992), we approved the use of victim impact evidence in a capital case at a time when there was no legislative expression of will on the subject. Since there is still no expression of legislative will on the question of using such evidence in a capital case where the victim survives, the same reasoning we applied in Bernard should guide us here. In Bernard, we relied heavily on the decision of the United States Supreme Court in Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). There, the Court held that the harm resulting from a particular crime is an important concern of the criminal law and that for a jury to assess meaningfully the defendant's moral culpability, it should have before it evidence of the specific harm caused by the defendant
At the time we decided Bernard, the Code of Criminal Procedure provided, without further detail, that evidence of the circumstances of the event and the character and propensities of the offender could be introduced at the penalty phase. We concluded that, under limiting guidelines, evidence of the impact of the crime on the victim's family could be admitted because it reflects on the offender's character and propensities. Such evidence shows the offender's willingness to commit the crime, even in the face of knowing that there would be likely impact not only on the victim, but on the victim's family as well.
The rational for introduction of victim impact evidence at the sentencing phase is to assist the jury in determining an appropriate sentence for the defendant. Victim impact evidence is clearly relevant because it sheds light on the character and propensities of the defendant, which is one of the primary factors in determining an appropriate sentence. The fact that the victim of a capital offense survives in no way diminishes the jury's need for relevant evidence to assist it in its critical task of assessing the character and propensities of the defendant so that it can arrive at a just sentence.
In 1998 the Louisiana Constitution was amended to provide in Art. 1, Sec. 25:
[A] victim of crime shall have the right... to be heard during all critical stages of ... postconviction proceedings....
In 1999, La. R.S 46:1842(2) was enacted to further make it clear that the victim is entitled to be heard at any judicial proceeding at which there is a disposition of the charged offense or where sentence is imposed. In my view, while the precise issue of the manner of presenting victim impact evidence in a capital case where the victim survives has not been explicitly addressed by the legislature, the people of this state and the legislature have clearly evidenced their intent that the impact of the crime on the victim should be considered at the sentencing phase of a proceeding. Indeed, in this case the disputed evidence is being offered to show the direct impact on the victims of the crime, who are both still minors. It is not being offered to show the impact on family members. Surely, this evidence is highly relevant to the character and propensities of the offender. Where evidence is offered by family members and professionals to show the direct impact of a crime on minor victims, who may not be able to speak adequately for themselves, there is ample reason to continue to follow our decision in *556 Bernard, as well as the implicit guidance found in our Constitution and in La.R.S. 46:1842(2).
Accordingly, in the absence of any expression of legislative will to the contrary, I respectfully dissent and would allow the disputed evidence to be presented to the jury.
NOTES
[1] The boys were approximately eight years old at the time of the commission of the crime.