685 So.2d 1063 (1996)
STATE of Louisiana
v.
Anthony WILSON.
STATE of Louisiana
v.
Patrick Dewayne BETHLEY.
Nos. 96-KA-1392, 96-KA-2076.
Supreme Court of Louisiana.
December 13, 1996.
Rehearing Denied December 30, 1996.
*1064 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Karen Godail Arena, and Stephen Enright, Metairie, for Applicant (No. 96-KA-1392).
Richard Phillip Ieyoub, Attorney General, Jerry L. Jones, District Attorney, John Michael Ruddick, and Susan E. Hamm, Monroe, for Applicant (No. 96-KA-2076).
Dwight Michael Doskey and Clyde Darrow Merritt, New Orleans, for Respondent (No. 96-KA-1392).
Walter Lee Perkins, Jr., Monroe and John Howard Holdridge, New Orleans, for Respondent (No. 96-KA-2076).
Terry A. O'Neill, New Orleans, Ayn W. Stehr, Baton Rouge, and Denise LeBoeuf, New Orleans, for Louisiana Foundation Sex Assault Inc., National Association of Social Work, Louisiana Chapter of National Association of Social Workers, Louisiana Chapter National Organization of Women, and American Civil Liberties Union (Amici Curiae).
BLEICH, Justice[*]
We are called upon to determine the constitutionality of La. R.S. 14:42(C) as it authorizes the death penalty for offenders who rape a victim under the age of 12 years old. We find that R.S. 14:42(C) is constitutional.

FACTS AND PROCEDURAL HISTORY
On December 21, 1995, Anthony Wilson was charged by grand jury indictment with the aggravated rape of a five year old girl. He moved to quash the indictment, alleging that the crime of rape could never be punished *1065 with the death penalty. The trial court granted Wilson's motion to quash, resulting in this appeal by the state.
Patrick Dewayne Bethley was charged with raping three girls, one of whom was his daughter, between December 1, 1995, and January 10, 1996. The ages of the little girls at the time of the rape were five, seven, and nine. Furthermore, the State alleges that at the time of the alleged crimes, Bethley knew that he was HIV positive. Bethley filed a motion to quash urging the unconstitutionality of La. R.S. 14:42(C). The trial court granted Bethley's motion to quash. Although finding La. R.S. 14:42(C) would pass constitutional muster under the Eighth Amendment and the Equal Protection clause of the United States Constitution and Article I, § 20 of the Louisiana Constitution, the trial court held La. R.S. 14:42(C) unconstitutional because the class of death eligible defendants was not sufficiently limited. That ruling resulted in an appeal.

DISCUSSION
The thrust of both defendants' arguments is that the imposition of the death penalty for a crime not resulting in a death is "cruel and unusual punishment" and therefore unconstitutional under the Eight Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution of 1974.
The phrase "cruel and unusual punishment" found in the Eighth Amendment and in Article I, § 20 takes its roots from the English Bill of Rights of 1689. Mun, Mandatory Life Sentence Without Parole Found Constitutionally Permissible For Cocaine Possession, 67 Wash. L.Rev. 713, 714 (1991). The English version of the phrase appears to prohibit punishments unauthorized by statute and beyond the jurisdiction of the court, as well as those disproportionate to the offense committed. Id., at 715. However, the American drafters of the Eight Amendment were primarily concerned with proscribing "tortures" and other "barbarous" methods of punishment such as pillorying, decapitation, and drawing and quartering. Id. Therefore, the American courts virtually ignored the Eighth Amendment since the barbaric practices proscribed had become obsolete. Id.
Not until the nineteenth century did the Supreme Court recognize that the scope of the Eighth Amendment might be broader that originally thought and include the prohibition of disproportionately excessive sentences. See Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). The years since Weems, supra, have seen a development of the Eighth Amendment's "cruel and unusual punishment" clause. As Chief Justice Warren said, "(t)he Amendment must draw its meaning from the evolving standards of decency that mark the maturing society." Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). Therefore, the Eighth Amendment bars not only those punishments that are barbaric but also those that are excessive.
A punishment is excessive and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more that the purposeful and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

EXCESSIVE PUNISHMENT ARGUMENT
The defendants' primary argument is that death is a disproportionate penalty for the crime of rape. The defendants' contention is based on Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) decided by the Supreme Court in a plurality opinion.[1] The Coker court rejected capital punishment as a penalty for the rape of an adult *1066 woman saying: "Although rape deserves serious punishment, the death penalty, which is unique in its severity and irrevocability, is an excessive penalty for the rapist who, as such and as opposed to the murderer, does not take human life." Coker, supra at 585, 97 S.Ct. at 2862. The plurality took great pains in referring only to the rape of adult women throughout their opinion[2], leaving open the question of the rape of a child. The defendants argue that the Coker findings cannot be limited to the rape of an adult. They contend the following words used by the Court would apply with equal force to the crime of statutory rape when no life is taken:
"Rape is without doubt deserving of serious punishment; but in terms of moral depravity and of the injury to the person and to the public, it does not compare with murder, which does involve the unjustified taking of human life. Although it may be accompanied by another crime, rape by definition does not include the death or even the serious injury to another person. The murderer kills; the rapist, if no more than that, does not. Life is over for the victim of the murderer; for the rape victim, life may not be nearly so happy as it was, but it is not over and normally is not beyond repair. We have the abiding conviction that the death penalty, which is unique in its severity and irrevocability,... is an excessive penalty for the rapist who, as such, does not take human life." Coker, supra at 598, 97 S.Ct. at 2869.[3]
The Coker plurality further discusses rape as a serious crime, finding it "highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the female victim. Short of homicide, it is the ultimate violation of self." Id., at 597, 97 S.Ct. at 2869. These scathing descriptions of rape refer to the rape of an adult female. While the rape of an adult female is in itself reprehensible, the legislature has concluded that rape becomes much more detestable when the victim is a child.
*1067 La. R.S. 14:42(C) was amended by Acts 1995, No. 397, § 1 to allow for the death penalty when the victim of rape is under the age of twelve.[4] Rape of a child less than twelve years of age is like no other crime. Since children cannot protect themselves, the State is given the responsibility to protect them. Children are a class of people that need special protection; they are particularly vulnerable since they are not mature enough nor capable of defending themselves. A "maturing society", through its legislature has recognized the degradation and devastation of child rape, and the permeation of harm resulting to victims of rape in this age category. The damage a child suffers as a result of rape is devastating to the child as well as to the community. As noted previously, in determining whether a penalty is excessive, the Supreme Court has declared that we should take into account the "evolving standards of decency", and in making this determination, the courts should not look to their own subjective conceptions, but should look instead to the conceptions of modern American society as reflected by objective evidence. Coker, supra at 592, 97 S.Ct. at 2866. As evidence of society's attitudes, we look to the judgment of the state legislators[5], who are representatives of society.
Louisiana's legislature determined a "standard of decency" by amending La. R.S. 14:42(C) to permit the death penalty in cases of aggravated rape when the victim is less than twelve, and deference must be given to that decision. The legislature alone determines what are punishable as crimes and the proscribed penalties. State v. Dorthey, 623 So.2d 1276 (1993); State v. Baxley, 94-2982 (La.5/22/95); 656 So.2d 973. The legislature is not required to select the least severe penalty for the crime as long as the selected penalty is not cruelly inhumane or disproportionate to the offense. Gregg, supra at 175, 96 S.Ct. at 2926. Furthermore, legislative enactments are presumed constitutional under both the Federal and the State Constitutions. Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); State v. Griffin, 495 So.2d 1306 (La. 1986). The party challenging the constitutionality of a statute bears a heavy burden in proving the statute to be unconstitutional. Gregg, supra at 175, 96 S.Ct. at 2926; State v. Griffin, supra at 1308. This is true in part because the constitutional test is intertwined with an assessment of contemporary standards, and the decisions of the legislature are indicative of such standards.[6] "In a democratic society legislatures, not courts, are constituted to respond to the will and consequently the moral values of the people." Furman v. Georgia, 408 U.S. 238, 383, 92 S.Ct. 2726, 2800-2801, 33 L.Ed.2d 346 (1972) (Burger, C.J., dissenting). The courts must exercise caution in asserting their views over those of the people as announced through their elected representatives.
One of the most conservative and acceptable methods of determining the excessiveness of a penalty is to examine the statutes of the other states. Gregg, supra at 179, 96 S.Ct. at 2928. The Coker court summarized the last 50 years of the history of the death penalty, recognizing that just prior to the Furman decision in 1971, just 16 *1068 states plus the Federal Government authorized the death penalty for rape. Coker, supra at 593, 97 S.Ct. at 2866-2867. Following Furman's invalidation of most death penalty statutes, 35 states immediately reinstituted death penalty statutes; however, only 3 of the states which had previously included rape as a capital offense reinstated rape of an adult woman as a crime deserving of the death penalty, and none of the states that had not previously recognized the death penalty for rape included it among capital felonies. Id., at 594, 97 S.Ct. at 2867. The three states reinstituting the death penalty for rape were Georgia, North Carolina, and Louisiana. Id. North Carolina's and Louisiana's laws were subsequently invalidated since they mandated the death penalty for those offenders found guilty.[7]Id. When Louisiana and North Carolina revised their statutes following the invalidation, they only permitted the death penalty for murder and not rape. Id. Georgia's law permitting the death penalty for the rape of an adult woman was invalidated by Coker. The Coker court used this data as an indication of society's failure to endorse the death penalty. However, this was with reference to adult women.
Louisiana is the only state that presently has a law in effect that provides for the death penalty for the rape of a child less than twelve. This fact, however, cannot be deemed determinative. The Coker court pointed out in its discussion of the history of the death penalty that three states, Florida, Mississippi, and Tennessee authorized the death penalty in rape cases when the victim was a child and the offender was an adult. Coker, supra at 595, 97 S.Ct. at 2867-2868. The Tennessee statute was invalidated in 1977 because the death sentence was mandatory.[8]Id. And as previously noted, Florida's and Mississippi's death penalty statutes were invalidated in 1981 and 1989 respectively. The Florida Supreme Court found the Coker analysis controlling in its invalidation of their statute, but the Mississippi Supreme Court invalidated the death penalty for the rape of a child without ever passing on the constitutionality of the law.[9] Even though these states's statutes were subsequently invalidated, the simple fact that they enacted such statutes since the Furman decision may suggest the beginning of a trend and public opinion favoring such penaltiesan evolution of a standard to deal with this heinous crime.
As Justice Powell wrote in his dissent in Coker:
"Considerable uncertainty was introduced into this area of the law by this Court's Furman decision. A large number of States found their death penalty statutes invalidated; legislatures were left in serious doubt by the expressions vacillating between discretionary and mandatory death penalties, as to whether this Court would sustain any statute imposing death as a criminal sanction. Failure of more States to enact statutes imposing death for rape of an adult woman may thus reflect hasty legislative compromise occasioned by time pressures following Furman, a desire to wait on the experience of those States which did enact such statutes, or simply an accurate forecast of today's *1069 holding." Coker, supra at 614, 97 S.Ct. at 2877. (Emphasis supplied)
This reasoning applies as well to our analysis. Since Coker, only Florida's statute has been invalidated under its reasoning. Mississippi's statute and Tennessee's statute were invalidated for infirmities in the statute or sentencing schemes of their respective states. While Louisiana remains the sole jurisdiction with such a statute in effect, it does not do so without the suggestion of some trend or suggestion from several other states that their citizens desire the death penalty for such a heinous crime.
The Coker Court only took into account the recent past in considering what society deems to be cruel and unusual punishment. Coker, supra at 614, 97 S.Ct. at 2877 (Powell, dissenting). We cannot look solely at what the legislatures have refrained from doing under conditions of great uncertainty arising from the Supreme Court's "less than lucid holdings on the Eighth Amendment." Id., at 614, 97 S.Ct. at 2877. The fact that Louisiana is presently the sole state allowing the death penalty for the rape of a child is not conclusive. There is no constitutional infirmity in a state's statute simply because that jurisdiction chose to be first. Statutes applied in one state can be carefully watched by other states so that the experience of the first state becomes available to all other states. Coker, supra at 616, 97 S.Ct. at 2878 (Burger, C.J., dissenting). That one State is "presently a minority does not, in my view, make [its] judgment less worthy of deference. Our concern for human life must not be confined to the guilty; a state legislature is not to be thought insensitive to human values because it acts firmly to protect the lives and related values of the innocent." Id. The needs and standards of society change, and these changes are a result of experience and knowledge. If no state could pass a law without other states passing the same or similar law, new laws could never be passed. To make this the controlling factor leads only to absurd results. Some suggest that it has been over a year since Louisiana has amended its law to permit the death penalty for the rape of a child, and that no other state has followed suit. Since its enactment, the statute has been under constant scrutiny. It is quite possible that other states are awaiting the outcome of the challenges to the constitutionality of the subject statute before enacting their own.

CRIME WITHOUT DEATH
It has been argued that the death penalty should not be an option when the crime committed produces no death. The Supreme Court has held that the death penalty is an excessive penalty for a robber who does not take a human life. Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). In Enmund, the defendant was the driver of the getaway car. His accomplices had robbed and shot two people. The shooter and Enmund were convicted of first degree murder and sentenced to death. The Supreme Court overturned Enmund's sentence of death holding that the Eight Amendment does not permit the imposition of the death penalty of a defendant who aids and abets a felony in course of which murder is committed by others but who does not himself kill, attempt to kill, or intend that killing take place or that lethal force will be employed. Enmund, supra at 795, 102 S.Ct. at 3375-3376. The Court goes on to say that "we have no doubt that robbery is a serious crime deserving serious punishment. It is not, however, a crime `so grievous an affront to humanity that the only adequate response may be the penalty of death.'" Enmund, supra at 798, 102 S.Ct. at 3377 (quoting Gregg v. Georgia, 428 U.S. 153, 184, 96 S.Ct. 2909, 2930, 49 L.Ed.2d 859 (1976)). The Court focused on Enmund's conduct in determining the appropriateness of the death penalty. In Enmund, the defendant simply aided and abetted a robbery which, as the Court holds, is not deserving of the death penalty. However, La. R.S. 14:42(C) contemplates a defendant who rapes a child. The legislature has determined that this crime is deserving of the death penalty because of its deplorable nature, being a "grievous affront to humanity."
Justice O'Connor, joined by Chief Justice Burger, Justice Powell, and Justice Rehnquist, dissented in Enmund finding that the "death penalty is not disproportionate to the crime of felony murder, even though the *1070 defendant did not actually kill or intend to kill his victims." Enmund supra at 826, 102 S.Ct. at 3391-3392 (O'Connor, J. dissenting). Justice O'Connor continues saying that the Court should not only consider contemporary standards in deciding if the death penalty is disproportionate to the crime, but should also consider the harm the defendant caused to the victim. Enmund supra at 816, 102 S.Ct. at 3386-3387. Contemporary standards as defined by the legislature indicate that the harm inflicted upon a child when raped is tremendous. That child suffers physically as well as emotionally and mentally, especially since the overwhelming majority of offenders are family members. Louisiana courts have held that sex offenses against children cause untold psychological harm not only to the victim but also to generations to come.
"Common experience tells us that there is a vast difference in mental and physical maturity of an adolescent teenager ... and a pre-adolescent child ... It is well known that child abuse leaves lasting scars from generation to the next ... such injury is inherent in the offense." State v. Brown, 660 So.2d 123, 126 (La.App. 2d Cir.1995).
"... Aggravated rape inflicts mental and psychological damage to its victim and undermines the community sense of security. The physical trauma and indignities suffered by the young victim of this offense were of enormous magnitude ..." State v. Polkey, 529 So.2d 474 (La.App. 1 Cir.1988). "... the child's tender age made her particularly vulnerable and capable of resisting... considering acutely deleterious consequences of conduct on an eight-yearold child." State v. Jackson, 658 So.2d 722 (La.App. 2d Cir.1995).
Four of the nine justices of the Supreme Court find that the death penalty is permissible in situations when the defendant has neither killed or intended to kill anyone.[10] The Court in Coker went even further in Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), when it held that the death penalty is not disproportionate when the defendant plays a major part in a felony that results in murder, although the defendant did not actually commit the murder, and the defendant's mental state is only one of reckless indifference to life. The Court also declined to draw a clear line between crimes that warrant the death penalty and those that do not. Tison, supra at 157, 107 S.Ct. at 1687-1688.
While the Eighth Amendment bars the death penalty for minor crimes under the concept of disproportionality, the crime of rape when the victim is under the age of twelve is certainly not a minor crime. The Coker Court recognized the possibility that the degree of harm caused by an offense could be measured not only by the injury to a particular victim but also by the resulting public injury. This implies that some offenses, in particular the rape of a child, might be so injurious to the public that death would not be disproportionate in relation to the crime for which it is imposed. "In part, capital punishment is an expression of society's moral outrage at particularly offensive conduct. This function may be unappealing to many, but it is essential in an ordered society that asks its citizens to rely on legal processes rather than self-help to vindicate their wrongs." Gregg, supra at 183, 96 S.Ct. at 2930.
Thus, we conclude that given the appalling nature of the crime, the severity of the harm inflicted upon the victim, and the harm imposed on society, the death penalty is not an excessive penalty for the crime of rape when the victim is a child under the age of twelve years old.

ARBITRARY AND CAPRICIOUS APPLICATION
When a sentencing body is given such discretion as to determine whether a life should be taken, that discretion must be suitably directed and limited so as to minimize the risk of arbitrary and capricious application. Gregg, supra at 189, 96 S.Ct. at 2932-2933. The state's capital-sentencing scheme must narrow the class of persons eligible for the death penalty. The narrowing can be done in one of two ways: (1) the legislature *1071 may itself narrow the definition of capital offenses, or (2) the legislature may broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase. Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). Louisiana has chosen the first method; the legislature has narrowed the definition of offenses which are punishable by death during the guilt phase. The Supreme Court has held this sentencing scheme constitutional since the class of death-eligible defendants are narrow and then at a separate sentencing phase, allowance is made for the consideration of mitigating circumstances. Id., at 246, 108 S.Ct. at 555.
The jury charged with the task of deciding between death or some other penalty is not given unbridled discretion in the decision making process. The Louisiana Code of Criminal Procedure provides guidelines which must be followed to ensure the appropriate outcome. The trial is bifurcated with a separate sentencing hearing; if the defendant is indigent, he is represented by a qualified attorney appointed from a list of "deathcertified" attorneys throughout the state; the jury must find beyond a reasonable doubt at least one aggravating factor; the defendant is allowed to present any relevant mitigating factors; and review of any guilty verdict in a capital case is mandatory.
It is argued by the defendants that the aggravating circumstances provided in La.C.Cr.P. art. 905 et seq. are directed towards first degree murder situations only.
Article 905.2, in referring to the sentencing hearing, mandates a consideration of the offense, the character and propensities of the offender, and the impact that the death of the victim has had on the family members. The defendants further point to the aggravating circumstances listed in Article 905.4, one of which must be present in order to impose guilt with the instant statute. Obviously, these circumstances were initially to apply only to first degree murder, but many of them apply to the crime of rape of a child under twelve as well.[11] Although it may have been more prudent for the legislature to enact additional circumstances which would relate to the crime of aggravated rape when it amended La. R.S. 14:42 to permit the death penalty, this omission does not in and of itself make the statute unconstitutional. Regardless, our decision is limited to the constitutionality of La. R.S. 14:42(C) and not to the sufficiency of the aggravating circumstances provided in La. C.CR.P. art. 905 et seq.
The fact that an aggravating circumstance, the victim being under the age of twelve years old, is an element of the crime itself does not make the statute constitutionally infirm. The Supreme Court has held that even when the only aggravating circumstance found by the jury is identical to an element of the crime, the death sentence was not invalid. Lowenfield, supra at 246, 108 S.Ct. at 555.
Lowenfield was charged with killing five people, and was convicted on three counts of first degree murder; the aggravating circumstance *1072 of "knowingly creat[ing] a risk of death or great bodily harm to more than one person" was also an element of the crime. Lowenfield, supra at 241, 108 S.Ct. at 552-553. Lowenfield argued that the overlap left the jury free to merely repeat its findings from the guilty phase at the sentencing phase. Id. The Supreme Court rejected his argument noting the narrowly defined class of defendants subject to the death penalty due to the legislature's limitations of first degree murder. Id. The Court found that the narrowing function could be performed at the guilt phase or the sentencing phase. Id.
The same is true in this case. The class of offenders is limited to those who rape a child under the age of twelve. Therefore, not every rapist will be subject to the death penalty, just as every murderer is not subject to the death penalty. We find the class sufficiently narrow following Lowenfield.
Much has been made of why eleven year old children are protected by such severe penalties but not twelve year olds. This is not a decision for this Court to make. The legislature is given the power to make the laws and they determined where the line should be drawn, and they drew it between the ages of eleven and twelve. La. R.S. 14:30, first degree murder, as well as La. C.Cr.P. art. 905.4(10) use the same line. Distinctions must be drawn and the legislature is in the best position to make these distinctions.
La. R.S. 14:42(C) has been challenged as unconstitutional because it permits the death penalty without a finding of intent[12]. The defendants argue that this makes the rape of a child a more severe crime than murder since first degree murder requires a finding of specific intent to kill. They argue that once a rapist is found guilty of raping a child under twelve he automatically would get the death penalty, while the murder must be found guilty of killing someone plus the specific intent to do so before he can be subject to the death penalty. This is not true. The statute does not make the death penalty automatic for the rapist as opposed to the murdered. Once the rapist is found guilty, he proceeds to the sentencing hearing in which he is permitted to introduce any mitigating evidence. Louisiana Code of Criminal Procedure article 905.5 lists several mitigating circumstances that may be considered in the determination of the sentence for the defendant in this type of case. Article 905.5(d) provides: "The offense was committed under circumstances which the offender reasonably believed to provide ... extenuation for his conduct." Article 905.5(h) provides: "Any other relevant mitigating circumstance." It is argued, for example, a seventeen year old may have what he thinks in consensual sex with a girl that he believes is thirteen or fourteen, but is in reality a prepubescent eleven year old. This "consensual sex" is actually aggravated rape, and because the victim was under twelve, the rapist is eligible for the death penalty. However, the death penalty is not the only option for the defendant. If he is found guilty under La. R.S. 14:42, in his sentencing phase, he will be allowed to introduce evidence that he truly thought the victim was of age, based on appearance or representations.[13] These safeguards will ensure that the death sentence will not be imposed on a defendant when the circumstances of his crime do not justify that penalty. This is evidenced by the few number of rape cases where the death penalty was actually imposed. Juries will reserve such an irrevocable penalty for the cases which are truly heinous and atrocious to impose the death penalty.
Rape of a child in an intentional crime in and of itself. One does not "accidentally" *1073 rape a child. The only accident which could occur is accidentally raping an eleven year old as opposed to a twelve year old.
We therefore find that the class of defendants eligible for the death penalty is sufficiently narrow so as not to lead to arbitrary and capricious application.
GOALS OF PUNISHMENT
Two legitimate goals of punishment are retribution and deterrence. Gregg, supra at 183, 96 S.Ct. at 2920-2930. The defendants argue that the death sentence in the case of child rape fails to meet either of these goals. They say the imposition of the death penalty will have a chilling effect on the already inadequate reporting of this crime. Since arguably, most child abusers are family members, the victims and other family members are concerned about the legal, financial and emotional consequences of coming forward. According to defendants, permitting the death penalty for the crime will further decrease the reporting since no child wants to be responsible for the death of a family member. But what defendants fail to understand is that the child is not the one responsible. The child is the innocent victim. The offender is responsible for his own actions. The subject punishment is for the legislature to determine, not this Court.
Self-help is not permitted in our society, so there is a need for retribution in our criminal sanctions. The death penalty for rape of a child less than twelve years old would be a deterrence to the commission of that crime. There are a range of possible penalties for such a crime, but as Justice Burger notes in his dissent in Coker:
"We cannot know which among this range of possibilities is correct, but today's holding (finding the death penalty for rape of an adult woman to be unconstitutional) forecloses the very exploration we have said federalism was intended to offer." Coker supra at 618, 97 S.Ct. at 2879.
While Louisiana is the only state that permits the death penalty for the rape of a child less than twelve, it is difficult to believe that it will remain alone in punishing rape by death if the years ahead demonstrate a drastic reduction in the incidence of child rape, an increase in cooperation by rape victims in the apprehension and prosecution of rapists, and a greater confidence in the role of law on the part of the people. This experience will be a consideration for this and other states' legislatures.
Our holding today permits the death penalty without a death actually occurring. In reaching this conclusion, we give great deference to our legislature's determination of the appropriateness of the penalty. This is not to say, however, that the legislature has free reign in proscribing penalties. They must still conform to the mandates of the Eighth Amendment and Article I, § 20 of the Louisiana Constitution, and they are still subject to judicial review by the courts. We hold only that in the case of the rape of a child under the age of twelve, the death penalty is not an excessive punishment nor is it susceptible of being applied arbitrarily and capriciously.

DECREE
For the reasons stated above, we find La. R.S. 14:42(C) to be constitutional. The motion to quash in each case is reversed and vacated. These cases are remanded to the respective trial courts.
KIMBALL, J., concurs in result and assigns reasons.
VICTORY, J., concurs with reasons.
WATSON, J., dissents.
CALOGERO, C.J., dissents and assigns reasons.
KIMBALL, Justice, concurring in result.
Because I do not believe Coker precludes the imposition of the death penalty in all circumstances of the rape of a child under the age of twelve and Louisiana's statutory scheme sufficiently narrows the class of death-eligible defendants, I respectfully concur in the result.
VICTORY, Justice, concurring with reasons.
I fully agree with the majority's conclusion that LSA-R.S. 14:42(C), which allows for the imposition of the death penalty against an *1074 offender who commits aggravated rape of a child under 12 years of age, is not unconstitutional.
I write separately to express my view that the Legislature should immediately amend Articles 905 et. seq. of the Code of Criminal Procedure (especially article 905.2) to clarify the sentencing procedure for an aggravated rape case in which the death sentence may be imposed.
CALOGERO, Chief Justice, dissenting.
No other State in the union imposes the death penalty for the aggravated rape of a child under twelve years of age. The reason for this, in my view, is that the statute fails constitutional scrutiny under the decisions of the United States Supreme Court in Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). I therefore dissent and would hold R.S. 14:42(C) facially unconstitutional under the Eighth Amendment to the United States Constitution.
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] Justice White announced the judgment of the Court joined by Justices Stewart, Blackmun, and Stevens. Justice Brennan and Justice Marshall filed separate concurring opinions finding the death penalty to be cruel and unusual punishment in all circumstances. Justice Powell concurred in the judgment in part and dissented in part finding that death is disproportionate punishment for the crime of raping an adult woman where, as is this case, the crime was not committed with excessive brutality and the victim did not sustain serious or lasting injury. Chief Justice Burger dissented, joined by Justice Rehnquist, concluding that he would leave to the States the task of legislating in this area of the law.
[2] The various justices, either in the plurality opinion, concurring opinion, or dissenting opinion, refer to "adult woman" fourteen times:

(1) Justice White, writing for the plurality, writes: "That question, with respect to rape of an adult woman, is now before us." Coker, supra at 592, 97 S.Ct. at 2866.
(2) Justice White: "... we seek guidance ... concerning the acceptability of death as a penalty for rape of an adult woman." Id. at 593, 97 S.Ct. at 2866.
(3) Justice White: "... 4 of the 16 States did not take the mandatory course and also did not continue rape of an adult woman as a capital offense." Id., at 595, 97 S.Ct. at 2867.
(4) Justice White: "The upshot is that Georgia is the sole jurisdiction ... that authorizes a sentence of death when the rape victim is an adult woman...." Id., at 596, 97 S.Ct. at 2868.
(5) Justice White: "... but it obviously weighs very heavily on the side of rejecting capital punishment as a suitable penalty for raping an adult woman." Id., at 596, 97 S.Ct. at 2868.
(6) Justice White: "... death is indeed a disproportionate penalty for the crime of raping an adult woman." Id., at 597, 97 S.Ct. at 2869.
(7) Justice Powell, concurring in part and dissenting in part, writes: "... ordinarily death is disproportionate punishment for the crime of raping an adult woman." Id., at 601, 97 S.Ct. at 2870.
(8) Chief Justice Burger, in his dissent joined by Justice Rehnquist, writes: "Since the Court now invalidates the death penalty as a sanction for all rapes of adults...." Id., at 611, 97 S.Ct. at 2876.
(9) Chief Justice Burger: "Georgia is the sole jurisdiction ... that authorizes a sentence of death when the rape victim is an adult woman." Id., at 613, 97 S.Ct. at 2877.
(10) Chief Justice Burger: "... Louisiana and North Carolina have enacted death penalty statutes for adult rape...." Id., at 613, 97 S.Ct. at 2877.
(11) Chief Justice Burger: "Failure of more States to enact statutes imposing death for rape of an adult woman...." Id., at 614, 97 S.Ct. at 2877.
(12) Chief Justice Burger: "... Georgia has been the only State whose adult rape death penalty statute has not otherwise been invalidated...." Id., at 615, 97 S.Ct. at 2878.
(13) Chief Justice Burger: "... an appropriate punishment for the rape of an adult woman...." Id., at 615, 97 S.Ct. at 2878.
(14) Chief Justice Burger: "... rejecting capital punishment as a suitable penalty for raping an adult woman...." Id., at 618, 97 S.Ct. at 2879.
[3] The contention that the harm caused by a rapist is less serious than that caused by a murderer is apparently not subscribed to by all rape victims. In some cases women have preferred death to being raped or have preferred not to continue living after being raped. Karp, David J., Coker v. Georgia: Disproportionate Punishment and the Death Penalty for Rape, 78 Columbia L.Rev. 1714, 1720 (1978).
[4] R.S. 14:42(A) defines aggravated rape as anal or sexual intercourse committed without the lawful consent of the victim. When the victim is under the age of 12, by definition that victim has not lawfully consented and ignorance of the victim's age is not a defense.
[5] La. R.S. 14:42(C) was amended by Acts 1995, No. 397, § 1 of the Louisiana Legislature. This amendment began as House Bill 55 which passed in the House of Representatives with a vote of 79 yeas to 22 nays. The Bill was then sent to the Senate which passed it with a vote of 34 yeas to 1 nay. The Bill was then signed into law by Governor Edwards on 6/17/95 to become effective on 8/15/95.
[6] Another body of people play a role in determining the contemporary standards of our society. That body is the juries who make the determination of whether a certain defendant deserves the death penalty for his particular crime. The Coker Court concluded that "in the vase majority of cases, at least 9 out of 10, juries have not imposed the death sentence [in rape cases]." Coker, supra at 596-597, 97 S.Ct. at 2868-2869. However, in drawing this conclusion, the Court does not say whether these rape cases were the rape of an adult or of a child. Moreover, the reluctance of the juries to impose the death penalty may reflect the humane feeling that this most irrevocable of sanctions should be reserved for extreme cases. Furman, supra at 388, 92 S.Ct. at 2803 (Burger, C.J., dissenting).
[7] see Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).
[8] Collins v. State, 550 S.W.2d 643 (Tenn.1977).
[9] Florida and Mississippi have statutes providing for the death penalty in the case of rape of a child under the age of twelve, but recent jurisprudence has ruled these laws unconstitutional.

The Florida Supreme Court found the analysis in Coker controlling and held that "the sentence of death is grossly disproportionate and excessive punishment for the crime of sexual assault." Buford v. State, 403 So.2d 943 (1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982).
The Mississippi Supreme Court held that "under present statutory authority the maximum punishment upon conviction of this crime [rape of a child under twelve] is life imprisonment," and did not reach the constitutional question. Leatherwood v. State, 548 So.2d 389 (Miss. 1989). Under Mississippi law at the time, upon conviction of a defendant of a capital offense, the court conducts a separate sentencing proceeding to determine the sentence. The sentencing guidelines for the death penalty require a finding that the defendant actually killed, attempted to kill, intended that a killing take place, or contemplate lethal force be employed. Miss.Code Ann. § 99-19-101 (Supp.1988) Therefore, a conviction of rape did not meet the requirements for the imposition for the death penalty.
[10] see Justice O'Connor's dissent in Enmund, supra, joined by Chief Justice Burger, Justice Powell, and Justice Rehnquist.
[11] Of the aggravating circumstances listed in Article 905.4, the following could possibly apply to La. R.S. 14:42(C):

(1) The offender was engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated kidnapping, second degree kidnapping, aggravated burglary, aggravated arson, aggravated escape, assault by drive-by shooting, armed robbery, first degree robbery, or simple robbery.
(3) The offender has been previously convicted of an unrelated murder, aggravated rape, aggravated burglary, aggravated arson, aggravated escape, armed robbery, or aggravated kidnapping.
(5) The offender has offered or has been offered or has given or received anything of value for the commission of the offense.
(7) The offense was committed in an especially heinous, atrocious or cruel manner.
(8) The victim was a witness in a prosecution against the defendant, gave material assistance to the state in any investigation or prosecution of the defendant, or was an eye witness to a crime alleged to have been committed by the defendant or possessed other material evidence against the defendant.
(10) The victim was under the age of twelve years or sixty-five years of age or older.
(12) The offender was engaged in the activities prohibited by R.S. 14:107.1(C)(1):
"No person shall commit ritualistic mutilation, dismemberment, or torture of a human as part of a ceremony, rite, initiation, observance, performance, or practice."
[12] La. R.S. 14:42(A): Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances: (4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
[13] Furthermore, the legislature, if it deems it appropriate, is empowered to add specific language regarding mistake of age as a mitigating factor to this article in connection with this crime.